**Exhibit B**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
-------------------------------------------------------------x
                                                    :
In re                                               :          Chapter 11
                                                    :
GLOBAL AVIATION HOLDINGS INC., et al.,¹ :              Case No. 13- 12945 (MFW)
                                                    :
           Debtors.                                 :          (Jointly Administered)
                                                    :
                                                    :          Re: Docket No. [__]
-------------------------------------------------------------x
```

**INTERIM ORDER (1) AUTHORIZING POST-PETITION FINANCING PURSUANT TO
11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(3) AND 364(d)(1); (2) AUTHORIZING THE
USE OF CASH COLLATERAL; (3) GRANTING SECURITY INTERESTS AND
SUPERPRIORITY CLAIMS; (4) PROVIDING ADEQUATE PROTECTION; (5)
<u>MODIFYING THE AUTOMATIC STAY; AND (6) GRANTING RELATED RELIEF</u>**

Upon the motion (the "***Motion***"), dated November 12, 2013, of Global Aviation Holdings Inc., North American Airlines, Inc. and World Airways, Inc. (each, a "***Borrower***"), and New ATA Investment Inc., New ATA Acquisition Inc., World Air Holdings, Inc., and Global Shared Services, Inc. (each, a "***Guarantor***"), each as a debtor and debtor-in-possession in the above-captioned Chapter 11 cases (collectively, the "***Debtors***" and the "***Cases***"), pursuant to Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 507 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "***Bankruptcy Code***") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), seeking, among other things:

(1)     authorization for the Borrowers to obtain post-petition loans, advances and other financial accommodations on an interim basis for a period through and including the date of the Final Hearing (as defined below) from Cerberus Business Finance,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, include: Global Aviation Holdings Inc. (2196); Global Shared Services, Inc. (1692); New ATA Acquisition Inc. (1985); New ATA Investment Inc. (2109); North American Airlines, Inc. (8792); World Air Holdings, Inc. (1036); and World Airways, Inc. (8276).  The Debtors' corporate address is 101 World Drive, Peachtree City, Georgia 30269.

LLC, in its capacities as administrative agent and collateral agent (in such capacities, collectively, the "***DIP Agent***") for itself and the DIP Lenders (as defined below) in accordance with all of the lending formulae, sublimits, terms and conditions set forth in the DIP Credit Agreement (as defined below), and in accordance with this Order, secured by security interests in and liens upon all of the Collateral (as defined below) pursuant to Sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code;

(2)    authorization for the Borrowers and the Guarantors (individually, a "***Debtor***" and collectively, the "***Debtors***") to enter into, be bound by, and perform under the revolving debtor-in-possession credit facility (the "***DIP Facility***"), entitled "Financing Agreement" dated as of November 13, 2013 by and among the Borrowers, the Guarantors, the DIP Agent, and the lenders from time to time party thereto (the "***DIP Lenders***") which agreement is attached to the Motion as <u>Exhibit A</u> (as it may be modified, supplemented, amended or restated from time to time, the "***DIP Credit Agreement***", and together with the other Loan Documents, as defined in the DIP Credit Agreement, the "***DIP Loan Documents***");

(3)    modification of the automatic stay to the extent hereinafter set forth;

(4)    the grant to the DIP Agent, for the benefit of the DIP Lenders, of superpriority administrative claim status pursuant to Section 364(c)(1) of the Bankruptcy Code in respect of all obligations under the DIP Credit Agreement and DIP Loan Documents (the "***DIP Obligations***");

(5)    authorization for the Debtors to use the Pre-Petition Collateral (including Cash Collateral) (each as defined below) subject to the existing liens and security interests in favor of the Pre-Petition Agents, on behalf of the Pre-Petition Lenders (as each of those terms is defined below), and granting adequate protection to these parties as set forth herein; and

(6)    the setting of a final hearing on the Motion; and

The initial hearing on the Motion having been held by this Court on November 13, 2013 (the "*Interim Hearing*"); and

It appearing that due and appropriate notice of the Motion, the relief requested therein, and the Interim Hearing (the "*Notice*") was served by the Debtors in accordance with Bankruptcy Rule 4001(c) on (i) the Pre-Petition Agents, (ii) the Pre-Petition Lenders, (iii) the United States Trustee for the District of Delaware (the "*U.S. Trustee*"), (iv) the holders of the thirty (30) largest unsecured claims against the Debtors' estates (the "*30 Largest Unsecured Creditors*"), and (v) the Internal Revenue Service (collectively, the "*Noticed Parties*"); and

This Court having reviewed the Motion and any responses and objections thereto, the *Declaration of William A. Garrett, Executive Vice President and Chief Financial Officer of Global Aviation Holdings Inc., in Support of First Day Pleadings*, the other filings and pleadings made by the Debtors, the evidence and testimony presented at the Interim Hearing, and after due deliberation and consideration and good and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:

A.    <u>Petition</u>.  On November 12, 2013 (the "*Petition Date*"), each Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

B.    <u>Jurisdiction and Venue</u>.  The Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D), (G) and (M).  Venue in this Court over the Cases and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    <u>Notice</u>.  Under the circumstances, the Notice given by the Debtors of the Motion, the Interim Hearing and the relief granted under this Order constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001(c).

D.    Findings Regarding the First Lien Lenders, the Pre-Petition Collateral and the First Lien Obligations.  Without prejudice to the rights of any other party as provided in Paragraph 9.1 of this Order, the Debtors admit, stipulate, acknowledge and agree that:

(i)    *First Lien Financing Agreement*: As of the Petition Date, the Borrowers, the Guarantors, the financial institutions parties thereto from time to time as lenders (the "***First Lien Lenders***"), and Cerberus Business Finance, LLC as first lien collateral agent and administrative agent (in such capacity and together with any successors thereto, the "***First Lien Agent***") are parties to that certain First Lien Financing Agreement dated as of February 13, 2013 (as amended, amended and restated, supplemented or otherwise modified, refinanced or replaced prior to the Petition Date, the "***First Lien Financing Agreement***" and together with the other Loan Documents (as defined in the First Lien Financing Agreement), in each case as amended, amended and restated, supplemented or otherwise modified, refinanced or replaced prior to the Petition Date, collectively, the "***First Lien Loan Documents***").  The First Lien Loan Documents provide that (a) the Debtors are obligated for principal, accrued and unpaid interest (including default interest), fees, costs, expenses, indemnities, and other amounts arising under the First Lien Loan Documents (the "***First Lien Obligations***"), and (b) all of the First Lien Obligations are secured by first priority liens granted to the First Lien Agent for the benefit of the First Lien Lenders (the "***First Liens***") on substantially all of the property of the Debtors, as described and defined in the First Lien Loan Documents (the "***Pre-Petition Collateral***"), which includes cash collateral within the meaning of Section 363(a) of the Bankruptcy Code ("***Cash Collateral***").

(ii)    *First Lien Obligations and First Liens*: As of the Petition Date, the outstanding First Lien Obligations totaled no less than $39,000,000, exclusive of all accrued and unpaid interest, costs, expenses, and fees owed to the First Lien Agent and First Lien Lenders. The First Liens (1) are valid, binding, enforceable and perfected liens in the Pre-Petition Collateral, (2) were granted to the First Lien Agent for the benefit of the First Lien Lenders for fair consideration and reasonably equivalent value, (3) are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or non-bankruptcy law, and

(4) are subject and subordinate only to valid, perfected and unavoidable liens permitted under the applicable First Lien Loan Documents, but only to the extent that (x) such liens are permitted by the applicable First Lien Loan Documents to be senior to the applicable First Liens and (y) such liens are actually senior to the applicable First Liens under applicable law ((x) and (y) together, the "*Permitted Liens*").  Moreover, (1) all of the First Lien Obligations constitute legal, valid and binding obligations of the applicable Debtors, enforceable in accordance with the terms of the applicable First Lien Loan Documents, (2) no setoffs, recoupments, offsets, defenses or counterclaims to any of the First Lien Obligations exist, and (3) no portion of the First Lien Obligations or any payments, transfers or obligations made to or for the benefit of the First Lien Agent or any of the First Lien Lenders are subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or non-bankruptcy law.

(iii)    *Release of First Lien Agent, First Lien Lenders, and Related Parties*:  In consideration of the First Lien Agent's and First Lien Lenders' consent to the Debtors' use of Cash Collateral, each Debtor, on behalf of itself, its estate, and its respective successors, assigns, and other legal representatives (collectively, the "*First Lien Releasors*"), hereby absolutely, unconditionally and irrevocably releases, remises and forever discharges the First Lien Agent and each First Lien Lender and their respective successors and assigns, and their present and former shareholders, equityholders, members, managers, partners, affiliates, subsidiaries, divisions, predecessors, directors, officers, agents, attorneys, financial advisors, consultants, employees and other representatives (all such parties being hereinafter referred to collectively as the "*First Lien Releasees*" and individually as a "*First Lien Releasee*"), of and from any and all "claims" (as defined in the Bankruptcy Code), counterclaims, demands, liabilities, responsibilities, disputes, remedies, causes of action, defenses, setoffs, recoupments, other offset rights, indebtedness and obligations, of every kind, nature and description, whether arising at law or in equity, including, without limitation, any so-called "lender liability" claims or defenses, that First Lien Releasors had, have or hereafter can or may have against First Lien

Releasees as of the date hereof, relating to and/or otherwise in connection with the First Lien Obligations, the First Lien Loan Documents, the First Liens, the Pre-Petition Collateral, or the debtor-creditor relationship between any of the First Lien Agent and the First Lien Lenders, on the one hand, and any of the Debtors, on the other hand, including, without limitation, (i) any recharacterization, subordination, avoidance, or other claim arising under or pursuant to Section 105 or Chapter 5 of the Bankruptcy Code or under any other similar provisions of non-bankruptcy law, (ii) any right or basis to challenge or object to the amount, validity, extent, enforceability and non-avoidability of the First Lien Obligations, (iii) any transfers relating to and/or otherwise in connection with the First Lien Obligations, and (iv) the validity, perfection, priority, extent, enforceability, and non-avoidability of the First Liens.

(iv)     *Subordination Agreement*:  As of the Petition Date, the Pre-Petition Agents, on behalf of themselves and the Pre-Petition Lenders (as defined below), the Borrowers, and the Guarantors are each parties to that certain Subordination Agreement dated as of February 13, 2013 (as amended, amended and restated, supplemented or otherwise modified, refinanced or replaced prior to the Petition Date, the "***Subordination Agreement***").    The Subordination Agreement provides for, among other things, the subordination of the Second Liens and Third Liens (each as defined below) to the First Liens, and the subordination of the right of payment of the Second Lien Lenders and the Third Lien Lenders (each as defined below) to the right of payment of the First Lien Lenders.  The Subordination Agreement was entered into in good faith, is fair and reasonable to the parties thereto, is enforceable in accordance with its terms, and is an enforceable subordination agreement under Section 510(a) of the Bankruptcy Code.

E.     Findings Regarding the Second Lien Lenders, Second Lien Obligations, Third Lien Lenders, Third Lien Obligations, and Subordination Agreement.

(i)     *Second Lien Financing Agreement*:  As of the Petition Date, the Borrowers, the Guarantors, the financial institutions parties thereto from time to time as lenders (the "***Second Lien Lenders***"), and Wells Fargo Bank, National Association as second lien collateral agent and administrative agent (in such capacity and together with any successors

thereto, the "**Second Lien Agent**") are parties to that certain Second Lien Financing Agreement dated as of February 13, 2013 (as amended, amended and restated, supplemented or otherwise modified, refinanced or replaced prior to the Petition Date, the "**Second Lien Financing Agreement**" and together with the other Loan Documents (as defined in the Second Lien Financing Agreement), in each case as amended, amended and restated, supplemented or otherwise modified, refinanced or replaced prior to the Petition Date, collectively, the "**Second Lien Loan Documents**").  The Second Lien Loan Documents provide that (a) the Debtors are obligated for principal, accrued and unpaid interest (including default interest), fees, costs, expenses, indemnities and other amounts arising under the Second Lien Financing Agreement (collectively the "**Second Lien Obligations**"); and (b) all of the Second Lien Obligations are secured by junior and subordinated liens granted to, or for the benefit of, the Second Lien Agent, on behalf of the Second Lien Lenders, on the Pre-Petition Collateral (the "**Second Liens**"), as more fully described in the Second Lien Loan Documents.  For the avoidance of any doubt, the Second Liens are subject and subordinate to the First Liens and to liens that are permitted to be senior to or *pari passu* with the First Liens by the applicable First Lien Loan Documents.  As of the Petition Date, the Second Lien Agent, on behalf of the Second Lien Lenders, has asserted that the aggregate amount outstanding under the Second Lien Financing Agreement was approximately $85,000,000, exclusive of all accrued and unpaid interest, costs, expenses, and fees owed to the Second Lien Agent and Second Lien Lenders.

(ii)    *Third Lien Financing Agreement*:  As of the Petition Date, the Borrowers, the Guarantors, the financial institutions parties thereto from time to time as lenders (the "**Third Lien Lenders**" and, collectively with the First Lien Lenders and Second Lien Lenders, the "**Pre-Petition Lenders**"), and Wells Fargo Bank, National Association as third lien collateral agent and administrative agent (in such capacity and together with any successors thereto, the "**Third Lien Agent**" and, collectively with the First Lien Agent and Second Lien Agent, the "**Pre-Petition Agents**") are parties to that certain Third Lien Financing Agreement dated as of February 13, 2013 (as amended, amended and restated, supplemented or otherwise

modified, refinanced or replaced prior to the Petition Date, the "***Third Lien Financing Agreement***" and together with the other Loan Documents (as defined in the Third Lien Financing Agreement), in each case as amended, amended and restated, supplemented or otherwise modified, refinanced or replaced prior to the Petition Date, collectively, the "***Third Lien Loan Documents***" and, collectively with the First Lien Loan Documents and Second Lien Loan Documents, the "***Pre-Petition Loan Documents***").   The Third Lien Loan Documents provide that (a) the Debtors are obligated for principal, accrued and unpaid interest (including default interest), fees, costs, expenses, indemnities and other amounts arising under the Third Lien Financing Agreement (collectively the "***Third Lien Obligations***" and, collectively with the First Lien Obligations and the Second Lien Obligations, the "***Pre-Petition Obligations***"); and (b) all of the Third Lien Obligations are secured by junior and subordinated liens granted to, or for the benefit of, the Third Lien Agent, on behalf of the Third Lien Lenders, on the Pre-Petition Collateral (the "***Third Liens***" and collectively with the First Liens and the Second Liens, the "***Pre-Petition Liens***"), as more fully described in the Third Lien Loan Documents.   For the avoidance of any doubt, the Third Liens are subject and subordinate to the First Liens and the Second Liens and to liens that are permitted to be senior to or *pari passu* with the First Liens and the Second Liens by the applicable First Lien Loan Documents and applicable Second Lien Loan Documents.   As of the Petition Date, the Third Lien Agent, on behalf of the Third Lien Lenders, has asserted that the aggregate amount outstanding under the Third Lien Financing Agreement was approximately $40,000,000, exclusive of all accrued and unpaid interest, costs, expenses, and fees owed to the Third Lien Agent and Third Lien Lenders.

    F.  <u>Findings Regarding the Post-Petition Financing and Adequate Protection</u>.

    (i)  *Post-Petition Financing*.   The Debtors have requested from the DIP Agent and the DIP Lenders, and the DIP Agent and the DIP Lenders are willing to extend, certain loans, advances and other financial accommodations on the terms and conditions set forth in this Order and the DIP Loan Documents.

(ii)    *Need for Post-Petition Financing*.    The Debtors do not have sufficient available sources of working capital, including cash collateral, to operate their businesses in the ordinary course of business without the financing requested under the Motion. The Debtors' ability to maintain business relationships with their vendors, suppliers and customers, to pay their employees, and to otherwise fund their operations is essential to the Debtors' continued viability as the Debtors seek to maximize the value of the assets of their Estates (as defined below).    The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed post-petition financing arrangements with the DIP Agent and DIP Lenders as set forth in this Order and the DIP Loan Documents is vital to the preservation and maintenance of the going concern values of the Debtors.    Accordingly, the Debtors have an immediate need to obtain the post-petition financing in order to, among other things, permit the orderly continuation of the operation of their businesses, minimize the disruption of their business operations, and preserve and maximize the value of the assets of their bankruptcy estates (as defined under Section 541 of the Bankruptcy Code, the "***Estates***").

(iii)    *No Credit Available on More Favorable Terms*.    The Debtors are unable to procure financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code, as an administrative expense under Section 364(a) or (b) of the Bankruptcy Code, or solely based on the grant of an administrative expense priority pursuant to Section 364(c)(1) of the Bankruptcy Code.    The Debtors are also unable to obtain secured credit allowable solely under Section 364(c)(2) or 364(c)(3) of the Bankruptcy Code.    The Debtors have been unable to procure the necessary financing on terms more favorable than the financing offered by the DIP Agent and the DIP Lenders pursuant to the DIP Credit Agreement.

(iv)    *Budget*.    The Debtors have prepared and delivered to the DIP Agent and the DIP Lenders an initial Budget (as defined in the DIP Credit Agreement).    A copy of the Budget is attached hereto as Exhibit 1.    Such Budget has been thoroughly reviewed by the Debtors and their management and sets forth, among other things, projections for the periods covered thereby.    The DIP Agent and the DIP Lenders are relying upon the Debtors' compliance

with the Budget in accordance with the terms of the DIP Credit Agreement, the other DIP Loan Documents and this Order in determining to enter into the post-petition financing arrangements provided for herein.

(v)     *Business Judgment and Good Faith Pursuant to Section 364(e).* The terms of the DIP Loan Documents and this Order are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to debtors-in-possession, reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  The terms and conditions of the DIP Loan Documents and this Order have been negotiated in good faith and at arms' length by and among the Debtors, on one hand, and the DIP Agent, the DIP Lenders, the First Lien Agent, and the First Lien Lenders, on the other hand, with all parties being represented by counsel.  Any credit extended under the terms of this Order shall be deemed to have been extended in good faith by the DIP Agent and the DIP Lenders as that term is used in Section 364(e) of the Bankruptcy Code.

(vi)    *Adequate Protection for Secured Parties.*  The Pre-Petition Agents have negotiated in good faith regarding the Debtors' use of the Pre-Petition Collateral (including Cash Collateral) to fund the administration of the Debtors' Estates and continued operation of their businesses.  Subject to the entry and effectiveness of this Order, the Pre-Petition Agents, on behalf of the Pre-Petition Lenders, have agreed to permit the Debtors to use the Pre-Petition Collateral (including Cash Collateral) subject to the terms and conditions set forth herein.  The Pre-Petition Agents, on behalf of the Pre-Petition Lenders, are entitled to the adequate protection as set forth herein pursuant to Sections 361, 362 and 363 of the Bankruptcy Code.  Based on the Motion and on the record presented to the Court at the Interim Hearing, the terms of the proposed adequate protection arrangements and use of Cash Collateral are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the consent of the Pre-Petition Agents thereto.

(vii)  *Good Cause*.  The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtors, their creditors and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (a) minimize disruption to the Debtors' businesses and on-going operations, (b) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors, and (c) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets.

(viii)  *Immediate Entry*.  Sufficient cause exists for immediate entry of this Order pursuant to Bankruptcy Rule 4001(c)(2).  No party appearing in the Cases has filed or made an objection to the relief sought in the Motion or the entry of this Order, or any objections that were made (to the extent such objections have not been withdrawn or resolved) are hereby overruled.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

Section 1.      Authorization and Conditions to Financing.

1.1      Motion Granted.  The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this Order.  This Order shall hereinafter be referred to as the "***Interim Order***."  Notwithstanding any provision of the Bankruptcy Code or the Bankruptcy Rules to the contrary, this Interim Order shall take effect immediately upon entry.

1.2      Authorization to Borrow and Use Loan Proceeds.  The Debtors are hereby authorized to immediately borrow, pursuant to the DIP Credit Agreement, an aggregate amount not to exceed $36,000,000 pending entry of the Final Order (as defined below), provided, that disbursements of such amount are in accordance with the Budget and each Debtor shall be enjoined and prohibited from, at any time, using proceeds of the DIP Facility or the Pre-Petition Collateral (including Cash Collateral) except in accordance with the terms and conditions of this Interim Order; provided, that (a) in no event shall the Debtors' actual disbursements for any line

item in any given week exceed 115% of the disbursements projected for such line item in that week in the Budget plus the amount set forth in (c), below; (b) no amounts set forth in any line item may be expended for a purpose other than the purpose described in the line item; and (c) the Debtors may expend any unused amounts contained in a line item for a given week (without giving effect to the 115% variance set forth in (a), above) for the same line item in the two successive weekly periods ((a), (b), and (c), collectively, the "***Permitted Variances***"); provided, further, that the Debtors and the DIP Agent may modify the limitations set forth in (a) – (c) by written agreement.  Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their Estates outside the ordinary course of business, or any Debtor's use of proceeds of the DIP Facility or the Pre-Petition Collateral (including Cash Collateral) or other proceeds resulting therefrom, except as specifically permitted in this Interim Order.  Upon the entry of this Interim Order, the Debtors shall be authorized to use the Pre-Petition Collateral (including Cash Collateral) and to draw on the DIP Facility to make any disbursement as specifically provided in the Budget, taking into account the Permitted Variances, but solely in accordance with the terms and conditions set forth in this Interim Order and the DIP Loan Documents.  All practices and procedures for the payment and collection of proceeds of the Pre-Petition Collateral (including Cash Collateral) as were in effect immediately prior to the Petition Date are hereby approved and shall continue without interruption after the commencement of the Cases.

      1.3   <u>Financial Reporting</u>.  The Debtors shall provide the DIP Agent (for distribution to the DIP Lenders), and, with respect to (a) and (b) below, the U.S. Trustee and the Committee, with the following information until the termination of the DIP Agent's and the DIP Lenders' commitment to lend under the DIP Credit Agreement or the other DIP Loan Documents:

      (a)   On Tuesday of each week, an updated 13-week cash forecast in form consistent with the form of the Budget and supporting information in detail reasonably acceptable to the DIP Agent (an "***Updated Cash Forecast***");

(b)     Concurrently with the delivery of the Updated Cash Forecast, a report, in form and with supporting information in detail reasonably acceptable to the DIP Agent, reconciling the Debtors' sources, uses and disbursements of cash for the week most recently ended with the sources, uses and disbursements projected for such week in the Budget, along with a certification of an executive officer of the Debtors certifying (x) the amount of cash and cash equivalents of the Debtors, in the aggregate, as of the last day of the week then ended, and (y) that the Debtors are in compliance with the disbursements limitations set forth in Paragraph 1.2 of this Interim Order as of the end of the week most recently ended; and

(c)     Copies of all written reports that are required pursuant to the DIP Loan Documents, as applicable, and this Interim Order.

1.4     <u>Updated Budget</u>.  An updated Budget must be approved by the DIP Agent, in its sole and absolute discretion, by no later than the end of each four (4) week period following the entry of the Interim Order.  Upon approval of the updated Budget by the DIP Agent, the updated Budget shall become the "Budget" for purposes of this Interim Order.

1.5     <u>Monitoring of Collateral</u>.  The DIP Agent shall be permitted to retain expert consultants and financial advisors, which consultants and advisors shall be given reasonable access for purposes of monitoring the businesses of the Debtors and the Collateral. The Debtors shall reimburse the DIP Agent for the reasonable fees, costs, and expenses of the expert consultants and financial advisors retained by the DIP Agent pursuant to this Paragraph.

1.6     <u>DIP Loan Documents</u>

1.6.1     <u>Approval</u>.     The DIP Loan Documents (including, without limitation, the DIP Credit Agreement) and each term set forth therein are approved.  The DIP Obligations shall be an obligation of, and enforceable against, each Debtor on a joint and several basis.  All of such terms, conditions and covenants shall be sufficient and conclusive evidence of the borrowing arrangements by and among the Debtors, the DIP Agent and the DIP Lenders, and of each Debtor's assumption and adoption of all of the terms, conditions, and covenants of the

DIP Credit Agreement and the other DIP Loan Documents for all purposes, including, without limitation, to the extent applicable, the payment of all DIP Obligations arising thereunder, including, without limitation, all principal, interest, commissions, commitment fees, closing fees, servicing fees, unused line fees, audit and collateral monitoring fees, DIP facility fee, early termination fees, and other fees and expenses, including, without limitation, all of the DIP Agent's and the DIP Lenders' consultant fees, professional fees, attorney fees, legal expenses, and retainers as more fully set forth in the DIP Loan Documents.

    1.6.2 <u>Amendment.</u> Subject to the terms and conditions of the DIP Credit Agreement and the other DIP Loan Documents, the Debtors, the DIP Agent and the DIP Lenders may amend, modify, supplement or waive any provision of the DIP Loan Documents (an "***Amendment***") without further approval or order of the Court provided that (i) such Amendment is not material (for purposes hereof, a "material" Amendment shall mean any Amendment that increases the interest rate other than as currently provided in the DIP Loan Documents, increases the Total Revolving Credit Commitment (as defined in the DIP Credit Agreement), adds specific new events of default or enlarges the nature and extent of remedies available to the DIP Lenders following an Event of Default (as defined herein), or otherwise modifies any terms and conditions in any the DIP Loan Documents in a manner materially less favorable to Debtors, but a "material" Amendment shall not include an extension of the maturity date under the DIP Facility through and including the effective date of a plan of reorganization or liquidation); (ii) the Debtors provide prior written notice of the Amendment (the "***Amendment Notice***") to (x) the U.S. Trustee and (y) counsel to the official committee of unsecured creditors appointed in the Cases under Section 1102 of the Bankruptcy Code (the "***Committee***"), or in the event no such Committee is appointed at the time of such Amendment, the 30 Largest Unsecured Creditors; (iii) the Debtors file the Amendment with the Court; and (iv) no objection to the Amendment is filed with the Court within two (2) business days from the later of the date the Amendment is served or the date the Amendment is filed with the Court in accordance with this Paragraph.

Any material Amendment to the DIP Loan Documents must be approved by the Court to be effective.

Section 2.        Liens; Superpriority Administrative Claim Status.

        2.1    Priority and Liens.

           2.1.1    Lien Grant.  To secure the prompt payment and performance of any and all obligations of the Debtors to the DIP Agent and the DIP Lenders of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, the DIP Agent, for the benefit of itself and the other DIP Lenders, shall have and is hereby granted, effective as of the Petition Date, valid and perfected first priority security interests and liens, superior to all other liens, claims or security interests that any creditor of the Debtors' Estates may have (but subject to the Permitted Liens and the Carve Out Expenses (as defined below), as and to the extent expressly provided in Paragraph 2.1.2 below), in and upon all of the Collateral (as defined in the DIP Credit Agreement, the "*Collateral*") (collectively, the "*DIP Liens*").  Notwithstanding the foregoing or anything to the contrary contained in the DIP Credit Agreement, the grant to the DIP Agent and the DIP Lenders of liens on and security interests in avoidance actions brought under Sections 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and the proceeds therefrom (such avoidance actions, the "*Chapter 5 Actions*") to secure the prompt payment and performance of all DIP Obligations in accordance with the DIP Loan Documents shall be subject to the entry of an order approving the Motion on a final basis (the "*Final Order*" and together with this Interim Order, the "*Financing Orders*") granting such relief.

           2.1.2    Lien Priority.  The DIP Liens shall be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with Section 363, 364 or any other Section of the Bankruptcy Code or other applicable law; provided, however, that the DIP Liens shall be subject to the Permitted Liens and to the Carve Out Expenses to the extent provided for in Paragraph 2.3 of this Interim Order.

2.1.3   <u>Post-Petition Lien Perfection</u>.   This Interim Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection and priority of the DIP Liens without the necessity of (a) filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or (b) taking any other action to validate or perfect the DIP Liens or to entitle the DIP Liens to the priorities granted herein.   Notwithstanding the foregoing, the DIP Agent may, in its sole and absolute discretion, file financing statements, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay under Section 362 of the Bankruptcy Code in order to do so, and all such filed documents shall be deemed to have been filed or recorded at the time and on the Petition Date.   The applicable Debtors are authorized and directed to (a) execute and deliver to the DIP Agent all such financing statements, mortgages, notices and other documents as such parties may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of the DIP Liens granted pursuant hereto, and (b) pay all reasonable fees, costs and expenses that are reasonably required or necessary to facilitate any such filings or recordings elected to be made by the DIP Agent.   Without limiting the foregoing, the DIP Agent, in its sole and absolute discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has property, and in such event the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order.   Should the DIP Agent attempt to file, record or register this Interim Order or any other instrument as authorized hereunder, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, perfection and priority of the DIP Liens.

2.2   <u>Superpriority Administrative Expense</u>.   For all DIP Obligations now existing or hereafter arising pursuant to this Interim Order, the DIP Loan Documents or otherwise, the DIP Agent, for the benefit of itself and the other DIP Lenders, is granted an allowed superpriority administrative claim pursuant to Section 364(c)(1) of the Bankruptcy

Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtors, whether now in existence or hereafter incurred by the Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia*, Sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 364(c)(1), 546(c), 726 or 1114 of the Bankruptcy Code (the "***Superpriority Claim***"), provided, however, that the Superpriority Claim shall be subject only to the Permitted Liens, Carve Out Expenses, and the DIP Liens.

     2.3 <u>Carve Out Expenses</u>. Upon the written notice by the DIP Agent to the U.S. Trustee and lead counsel for the Debtors and the Committee delivered following the occurrence and during the continuation of an Event of Default under the DIP Loan Documents (the "***Carve Out Trigger Notice***"), the DIP Agent's and the DIP Lenders' liens, claims and security interests in the Collateral and their Superpriority Claim, and the Pre-Petition Agents' and Pre-Petition Lenders' liens, claims and security interests in the Pre-Petition Collateral (including Cash Collateral), and the Replacement Collateral and their Pre-Petition Lender Adequate Protection Claims (each as defined below) shall, in each instance, be subject to the right of payment of the following expenses (the "***Carve Out Expenses***"):

     (a) statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6);

     (b) fees payable to the Clerk of this Court;

     (c) the lesser of (A) the amount of the unpaid and outstanding reasonable fees, costs and expenses actually incurred by the Debtors' professionals (including ordinary course professionals) and (B) the budgeted and unpaid amount of the fees, costs and expenses of the Debtors' professionals (including ordinary course professionals), as set forth in the approved Budget, in each case for the period from and after the Petition Date and prior to the delivery of a Carve Out Trigger Notice, *minus* the collective amounts of the retainers held by the Debtors' professionals (including ordinary course professionals) as of delivery of a Carve Out Trigger Notice; provided, that such

fees, costs and expenses are ultimately allowed by a final order of the Court pursuant to Section 330 of the Bankruptcy Code (whether allowed before or after the delivery of a Carve Out Trigger Notice);

(d)      the lesser of (A) the amount of the unpaid and outstanding reasonable fees, costs and expenses actually incurred by the Committee's professionals and (B) the budgeted and unpaid amount of the fees, costs and expenses of the Committee's professionals, as set forth in the approved Budget, in each case for the period from and after the Petition Date and prior to the delivery of a Carve Out Trigger Notice, *minus* the collective amounts of the retainers held by the Committee's professionals as of delivery of a Carve Out Trigger Notice; provided, that such fees, costs and expenses are ultimately allowed by a final order of the Court pursuant to Section 330 of the Bankruptcy Code (whether allowed before or after the delivery of a Carve Out Trigger Notice);

(e)      the amount of the unpaid and outstanding reasonable Debtors' professionals' (including ordinary course professionals') fees, costs, and expenses that are incurred from and after the delivery of a Carve Out Trigger Notice in an aggregate amount not in excess of $100,000; and

(f)      the amount of the unpaid and outstanding reasonable Committee's professionals' fees, costs, and expenses that are incurred from and after the delivery of a Carve Out Trigger Notice in an aggregate amount not in excess of $25,000.

None of the Carve Out Expenses, proceeds from the DIP Facility, the Collateral, the Pre-Petition Collateral (including Cash Collateral) or the Replacement Collateral (as defined below), or the proceeds therefrom may be used for the payment of the fees, costs and expenses of any person (i) to challenge, as opposed to investigate, the amount, validity, perfection, priority, extent or enforceability of the Pre-Petition Obligations or the Pre-Petition Liens, (ii) to pursue any claim or causes of action of any kind against the DIP Agent, any DIP Lender, any Pre-Petition Agent, or any Pre-Petition

Lender (solely in their respective capacities as agent or lenders under the DIP Loan Documents or the Pre-Petition Loan Documents), (iii) to seek to use Cash Collateral in a manner or for a purpose to which the DIP Agent and First Lien Agent have not consented to in advance in writing, including, without limitation, seeking use of Cash Collateral over the objection of the DIP Agent and First Lien Agent, (iv) to seek to surcharge the Collateral, the Pre-Petition Collateral (including Cash Collateral) or the Replacement Collateral under Section 506(c) of the Bankruptcy Code or otherwise, or (v) to object to the exercise of remedies by the DIP Agent or First Lien Agent following an Event of Default; provided, however, subject to the limitations contained in Paragraph 9.1, below, up to $25,000 may be used for the payment of the fees, costs and expenses of counsel to the Committee to investigate, as opposed to challenge, the amount, validity, perfection, priority, extent or enforceability of the Pre-Petition Obligations or the Pre-Petition Liens.

2.4    Use of Cash Collateral; Adequate Protection.

2.4.1    Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Interim Order, the DIP Credit Agreement and the other DIP Loan Documents, and in accordance with the Budget, taking into account the Permitted Variances, the Debtors shall be and are hereby authorized to use, until the termination of the DIP Agent's and the DIP Lenders' commitment to lend under the DIP Credit Agreement or the other DIP Loan Documents, Cash Collateral subject to the Pre-Petition Liens.  Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their Estates outside the ordinary course of business, or any Debtor's use of Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order, the DIP Credit Agreement, and the other DIP Loan Documents and in accordance with the Budget, taking into account the Permitted Variances.

2.4.2    First Lien Adequate Protection.

a.    *First Lien Replacement Liens.*  As adequate protection for the diminution in value of their interests in the Pre-Petition Collateral (including Cash Collateral) on account of the Debtors' use of such Pre-Petition Collateral (including Cash

Collateral), the imposition of the automatic stay, the incurrence of the DIP Obligations, and the subordination to the Carve Out Expenses, the First Lien Agent, for the benefit of itself and the First Lien Lenders, is hereby granted, in respect of the First Lien Obligations, pursuant to Sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement liens upon and security interests in (1) all Collateral and the proceeds thereof, (2) all property and interests in property owned by any of the Debtors as of the Petition Date in which the First Lien Agent and First Lien Lenders do not hold a valid, enforceable, perfected and unavoidable lien or security interest and the proceeds therefrom, and (3) all property which becomes part of the Debtors' Estates on or after the Petition Date and the proceeds therefrom, including, subject to entry of the Final Order, the Chapter 5 Actions (collectively (1), (2) and (3) being the "***First Lien Replacement Collateral***"; the adequate protection replacement liens granted to the First Lien Agent, on behalf of the First Lien Lenders, the "***First Lien Replacement Liens***"); provided, that the First Lien Agent, on behalf of the First Lien Lenders, shall not receive First Lien Replacement Liens (1) on property or agreements related to such property that is of the type described in Sections 1110(a)(3)(A)(i) and (B) of the Bankruptcy Code to the extent that the Debtors are prohibited from granting liens and assignments under the terms of the lease or other such instrument applicable to such property of a party entitled to the protections afforded under Section 1110 of the Bankruptcy Code with respect to such property or agreements related to such property (the "***Excluded Section 1110 Assets***"); (2) on any leased property of the Debtors that is subject to a lease that prohibits a leasehold mortgage or lien thereon; or (3) on any contracts with any governmental entity that prohibits assignment or granting of a lien thereon (collectively (1), (2), and (3) being the "***Excluded Assets***"); and, provided, further, that nothing in this Interim Order shall constitute an admission by the Debtors that any contract is not subject to assumption or assignment pursuant to the Bankruptcy Code or otherwise.  Notwithstanding the foregoing, the First Lien Agent, on behalf of the

First Lien Lenders, will receive First Lien Replacement Liens on any proceeds of the sale, assignment or other disposition of any Excluded Assets. The First Lien Replacement Liens shall be junior and subordinate only to (i) the Permitted Liens, (ii) the Carve Out Expenses, and (iii) the DIP Liens.

        b.    *First Lien Section 507(b) Priority Claim.* To the extent that the First Lien Replacement Liens are insufficient protection against the diminution of their interests in Pre-Petition Collateral (including Cash Collateral) on account of the Debtors' use of such Pre-Petition Collateral (including Cash Collateral), the incurrence of the DIP Obligations, the imposition of the automatic stay and the subordination to the Carve Out Expenses, the First Lien Agent, for the benefit of itself and of the First Lien Lenders, is hereby granted, in respect of the First Lien Obligations, pursuant to Section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Cases and in any successor cases having, subject to the immediately-following sentence, priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtors, whether now in existence or hereafter incurred by the Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia*, Sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 546(c), 726 or 1114 of the Bankruptcy Code (the "***First Lien Adequate Protection Claim***"). The First Lien Adequate Protection Claim shall be an obligation of, and enforceable against, each Debtor on a joint and several basis and shall be junior and subordinate only to (i) the Carve Out Expenses, (ii) the Superpriority Claim, and (iii) the DIP Obligations.

        c.    *Adequate Protection Payments.* In addition to the foregoing, the First Lien Agent and First Lien Lenders shall receive from the Debtors, as additional adequate protection, monthly adequate protection payments in accordance with, and in the amounts set forth in, the Budget, which shall include the payment of all interest under the First Lien Loan Documents at the default rate in accordance with the

terms of the First Lien Loan Documents.  The Debtors shall also pay, no later than seven (7) days following receipt by the Debtors of any invoice therefor, with a copy to the Committee and U.S. Trustee, the reasonable fees, costs, and expenses for the professionals advising the First Lien Agent and First Lien Lenders, including Klee, Tuchin, Bogdanoff & Stern, LLP, Kirstein & Young, PLLC, Young, Conaway, Stargatt & Taylor, LLP, and SkyWorks Capital LLC, absent objection by the Debtors, the Committee, or the U.S. Trustee.  No application for payment of such fees, costs, and expenses shall be required, and the payment of such fees, costs, and expenses shall not be subject to the United States Trustee Guidelines.  All payments under this Paragraph shall be provisional in nature, and if any such payment(s) are disputed by a party in interest under Section 506(b) of the Bankruptcy Code and ultimately not allowed under such provision, the Court may order that such payment(s) be recharacterized as a payment of principal on the First Lien Obligations; provided, however, that the First Lien Agent and First Lien Lenders reserve all rights to contest or otherwise object to such recharacterization.  Any disputes regarding the fees, costs, and expenses payable under this Paragraph shall be resolved by the Court following notice and an opportunity for hearing.

        d.   *Maintenance of Collateral*.  The Debtors shall maintain the Pre-Petition Collateral and Replacement Collateral (as defined below), and maintain insurance with respect thereto, consistent with the requirements of the First Lien Loan Documents.

        2.4.3   <u>Second Lien Adequate Protection</u>.

        a.   *Second Lien Replacement Liens*.  As adequate protection for the diminution in value of their interests in the Pre-Petition Collateral (including Cash Collateral) on account of the Debtors' use of such Pre-Petition Collateral (including Cash Collateral), the imposition of the automatic stay, the incurrence of the DIP Obligations, and the subordination to the Carve Out Expenses, the Second Lien Agent, for the benefit

of itself and the Second Lien Lenders, is hereby granted, in respect of the Second Lien Obligations, pursuant to Sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement liens upon and security interests in (1) all Collateral and the proceeds thereof, (2) all property and interests in property owned by any of the Debtors as of the Petition Date in which the Second Lien Agent and Second Lien Lenders do not hold a valid, enforceable, perfected and unavoidable lien or security interest and the proceeds therefrom, and (3) all property which becomes part of the Debtors' Estates on or after the Petition Date and the proceeds therefrom, including, subject to entry of the Final Order, the Chapter 5 Actions (collectively (1), (2) and (3) being the "***Second Lien Replacement Collateral***"; the adequate protection replacement liens granted to the Second Lien Agent, on behalf of the Second Lien Lenders, the "***Second Lien Replacement Liens***"); provided, that the Second Lien Agent, on behalf of the Second Lien Lenders, shall not receive Second Lien Replacement Liens in the Excluded Assets.  Notwithstanding the foregoing, the Second Lien Agent, on behalf of the Second Lien Lenders, will receive Second Lien Replacement Liens on any proceeds of the sale, assignment or other disposition of any Excluded Assets.  The Second Lien Replacement Liens shall be junior and subordinate only to (i) the Permitted Liens, (ii) the Carve Out Expenses, (iii) the DIP Liens, (iv) the First Liens, and (v) the First Lien Replacement Liens.  The Second Lien Agent and the Second Lien Lenders shall have no right to seek or exercise any rights or remedies in respect of the Second Lien Replacement Lien (whether in these Chapter 11 Cases or any subsequently converted case(s)) until all DIP Obligations and First Lien Obligations have been indefeasibly paid and satisfied in full in accordance with the DIP Loan Documents, the First Lien Loan Documents, and this Interim Order.

        b.     *Second Lien Section 507(b) Priority Claim*.  To the extent that the Second Lien Replacement Liens are insufficient protection against the diminution of their interests in the Pre-Petition Collateral (including Cash Collateral) on account of

the Debtors' use of such Pre-Petition Collateral (including Cash Collateral), the incurrence of the DIP Obligations, the imposition of the automatic stay and the subordination to the Carve Out Expenses, the Second Lien Agent, for the benefit of itself and the Second Lien Lenders, is hereby granted, in respect of the Second Lien Obligations, pursuant to Section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Cases and in any successor cases having, subject to the immediately-following sentence, priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtors, whether now in existence or hereafter incurred by the Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia*, Sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 546(c), 726 or 1114 of the Bankruptcy Code (the "***Second Lien Adequate Protection Claim***").  The Second Lien Adequate Protection Claim shall be an obligation of, and enforceable against, each Debtor on a joint and several basis and shall be junior and subordinate only to (i) the Carve Out Expenses, (ii) the Superpriority Claim, (iii) the DIP Obligations, (iv) the First Lien Adequate Protection Claim, and (v) the First Lien Obligations.

        c.    *Maintenance of Collateral*.  The Debtors shall maintain the Pre-Petition Collateral and Replacement Collateral (as defined below), and maintain insurance with respect thereto, consistent with the requirements of the Second Lien Loan Documents.

        2.4.4   Third Lien Adequate Protection.

        a.    *Third Lien Replacement Liens*.  As adequate protection for the diminution in value of their interests in the Pre-Petition Collateral (including Cash Collateral) on account of the Debtors' use of such Pre-Petition Collateral (including Cash Collateral), the imposition of the automatic stay, the incurrence of the DIP Obligations, and the subordination to the Carve Out Expenses, the Third Lien Agent, for the benefit of itself and the Third Lien Lenders, is hereby granted, in respect of the Third Lien

Obligations, pursuant to Sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement liens upon and security interests in (1) all Collateral and the proceeds thereof, (2) all property and interests in property owned by any of the Debtors as of the Petition Date in which the Third Lien Agent and Third Lien Lenders do not hold a valid, enforceable, perfected and unavoidable lien or security interest and the proceeds therefrom, and (3) all property which becomes part of the Debtors' Estates on or after the Petition Date and the proceeds therefrom, including, subject to entry of the Final Order, the Chapter 5 Actions (collectively (1), (2) and (3) being the "***Third Lien Replacement Collateral***" and, collectively with the First Lien Replacement Collateral and the Second Lien Replacement Collateral, the "***Replacement Collateral***"; the adequate protection replacement liens granted to the Third Lien Agent, on behalf of the Third Lien Lenders, the "***Third Lien Replacement Liens***" and, collectively with the First Lien Replacement Liens and the Second Lien Replacement Liens, the "***Pre-Petition Lender Replacement Liens***"); provided, that the Third Lien Agent, on behalf of the Third Lien Lenders, shall not receive Third Lien Replacement Liens in the Excluded Assets. Notwithstanding the foregoing, the Third Lien Agent, on behalf of the Third Lien Lenders, will receive Third Lien Replacement Liens on any proceeds of the sale, assignment or other disposition of any Excluded Assets. The Third Lien Replacement Liens shall be junior and subordinate only to (i) the Permitted Liens, (ii) the Carve Out Expenses, (iii) the DIP Liens, (iv) the First Liens, (v) the First Lien Replacement Liens, (vi) the Second Liens, and (vii) the Second Lien Replacement Liens. The Third Lien Agent and the Third Lien Lenders shall have no right to seek or exercise any rights or remedies in respect of the Third Lien Replacement Lien (whether in these Chapter 11 Cases or any subsequently converted case(s)) until all DIP Obligations, First Lien Obligations, and Second Lien Obligations have been indefeasibly paid and satisfied in full in accordance with the DIP Loan Documents, First Lien Loan Documents, Second Lien Loan Documents, and this Interim Order.

b.      *Third Lien Section 507(b) Priority Claim*.  To the extent that the Third Lien Replacement Liens are insufficient protection against the diminution in value of their interests in the Pre-Petition Collateral (including Cash Collateral) on account of the Debtors' use of such Pre-Petition Collateral (including Cash Collateral), the incurrence of the DIP Obligations, the imposition of the automatic stay and the subordination to the Carve Out Expenses, the Third Lien Agent, for the benefit of itself and the Third Lien Lenders, is hereby granted, in respect of the Third Lien Obligations, pursuant to Section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Cases and in any successor cases having, subject to the immediately-following sentence, priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtors, whether now in existence or hereafter incurred by the Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia*, Sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 546(c), 726 or 1114 of the Bankruptcy Code (the "***Third Lien Adequate Protection Claim***" and, collectively with the First Lien Adequate Protection Claim and the Second Lien Adequate Protection Claim, the "***Pre-Petition Lender Adequate Protection Claims***").  The Third Lien Adequate Protection Claim shall be an obligation of, and enforceable against, each Debtor on a joint and several basis and shall be junior and subordinate only to (i) the Carve Out Expenses, (ii) the Superpriority Claim, (iii) the DIP Obligations, (iv) the First Lien Adequate Protection Claim, (v) the First Lien Obligations, (vi) the Second Lien Adequate Protection Claim, and (vii) the Second Lien Obligations.

c.      *Maintenance of Collateral*.  The Debtors shall maintain the Pre-Petition Collateral and Replacement Collateral, and maintain insurance with respect thereto, consistent with the requirements of the Third Lien Loan Documents.

2.4.5   Perfection of Pre-Petition Lender Replacement Liens.  This Interim Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection and

priority of the Pre-Petition Lender Replacement Liens without the necessity of (a) filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or (b) taking any other action to validate or perfect the Pre-Petition Lender Replacement Liens or to entitle the Pre-Petition Lender Replacement Liens to the priorities granted herein. Notwithstanding the foregoing, the Pre-Petition Agents may, in their sole and absolute discretion, file financing statements, mortgages, security agreements, notices of liens and other similar documents, and are hereby granted relief from the automatic stay under Section 362 of the Bankruptcy Code in order to do so, and all such filed documents shall be deemed to have been filed or recorded at the time and on the Petition Date. The applicable Debtors are authorized and directed to (a) execute and deliver to the Pre-Petition Agents all such financing statements, mortgages, notices and other documents as such parties may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of the Pre-Petition Lender Replacement Liens granted pursuant hereto, and (b) pay all reasonable fees, costs and expenses that are reasonably required or necessary to facilitate any such filings or recordings elected to be made by the Pre-Petition Agents. Without limiting the foregoing, the Pre-Petition Agents, in their sole and absolute discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has property, and in such event the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order. Should the Pre-Petition Agents attempt to file, record or register this Interim Order or any other instrument as authorized hereunder, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, perfection and priority of the Pre-Petition Lender Replacement Liens.

       2.4.6   <u>Nullifying Pre-Petition Restrictions on Replacement Collateral</u>. Notwithstanding anything to the contrary contained in any pre-petition agreement, contract, lease, document, note or instrument to which any Debtor is a party or under which any Debtor is

obligated, except as otherwise permitted under the Pre-Petition Loan Documents, any provision that restricts, limits or impairs in any way any Debtor from granting to Pre-Petition Agents, for the benefit of the Pre-Petition Lenders, security interests in or liens upon any of the Debtors' assets or properties (including, among other things, any anti-lien granting or anti-assignment clauses in any leases or other contractual arrangements to which any Debtor is a party) under this Interim Order, or otherwise entering into and complying with all of the terms, conditions and provisions hereof shall not (a) be effective and/or enforceable against any such Debtor, any Pre-Petition Agent, or any Pre-Petition Lender, or (b) adversely affect the validity, priority or enforceability of the Replacement Liens, claims, rights, priorities and/or protections granted to the Pre-Petition Agents and Pre-Petition Lenders pursuant to this Interim Order to the maximum extent permitted under the Bankruptcy Code and other applicable law.

Section 3.     Authorization to Pay Professional Fees of DIP Agent and DIP Lenders.

3.1     Any and all fees, costs, expenses and retainers paid or required to be paid in connection with the DIP Loan Documents (including, but not limited to, the fees, costs, expenses and retainers of counsel to the DIP Agent and the DIP Lenders) are hereby authorized and shall be paid as set forth in the DIP Credit Agreement.

Section 4.     Sale Process.

4.1     Sale Process Generally.  The Debtors have indicated that they intend to conduct an accelerated process to sell all or substantially all of their assets or equity and that they may seek to proceed with a plan of reorganization or liquidation if necessary to consummate a sale.  This Interim Order shall not constitute the consent of the DIP Lenders, the DIP Agent, on behalf of the DIP Lenders, the First Lien Lenders, or the First Lien Agent, on behalf of the First Lien Lenders, to any such sale.  In the event of any such sale, however, and subject to entry of the Final Order and Sale Order (each as defined below), the Debtors are authorized and directed to distribute all net sale proceeds, first, to the First Lien Agent in satisfaction of the First Lien Obligations until all such First Lien Obligations have been indefeasibly paid in full in cash (other than with respect to contingent indemnification obligations as to which no claims have been

asserted), and, second, to the DIP Agent in satisfaction of the DIP Obligations until all such DIP Obligations have been indefeasibly paid in full in cash (other than with respect to contingent indemnification obligations as to which no claims have been asserted).  The Debtors shall provide a weekly telephonic update on their sale process to the DIP Agent and shall provide other updates on the sale process as the DIP Agent may request.

      4.2    Sale Milestones.  As a condition to funding under the DIP Facility, the Debtors shall achieve the following timeline milestones in connection with the sale of all or substantially all of their assets or equity, in each case in a manner satisfactory to the DIP Agent and the DIP Lenders (the "***Sale Milestone***s"):

      a.    filing of a motion seeking entry of an order satisfactory to the DIP Agent and the DIP Lenders in their sole and absolute discretion, approving the Debtors' retention of an investment banking firm acceptable to the DIP Agent and the DIP Lenders (it being acknowledged that Imperial Capital, LLC is acceptable to the DIP Agent and the DIP Lenders), no later than ten (10) days after the Petition Date; provided the Debtors obtain entry of such an order within thirty (30) days after the Petition Date;

      b.    completion of an offering memorandum, teaser and nondisclosure agreement no later than twenty-one (21) days after the Petition Date;

      c.    entry of an order of the Court, satisfactory to the DIP Agent and the DIP Lenders in their sole and absolute discretion, approving sale procedures (the "***Sale Procedures Order***") no later than thirty (30) days after the Petition Date;

      d.    conduct an auction (the "***Auction***"), if more than one bona fide offer meeting the conditions established by the Debtors with the approval of the DIP Agent and the DIP Lenders is received, no later than sixty (60) days after entry of the Sale Procedures Order or such later date agreed to by the DIP Agent in its sole and absolute discretion;

      e.    entry of a final order of the Court, satisfactory to the DIP Agent and the DIP Lenders in their sole and absolute discretion, approving the sale (the

"**Sale Order**") no later than seventy-five (75) days after entry of the Sale Procedures Order or such later date agreed to by the DIP Agent in its sole and absolute discretion;

        f.     close the sale no later than forty-five (45) days after entry of the Sale Order; provided, that, if necessary, in the sole and absolute discretion of the DIP Agent and DIP Lenders, to consummate a sale, entry of a final order of the Court, satisfactory to the DIP Agent and the DIP Lenders in their sole and absolute discretion, confirming a plan of reorganization or liquidation that consummates such sale no later than one-hundred-twenty (120) days after entry of the Sale Order or such later date agreed to by the DIP Agent in its sole and absolute discretion.

Section 5.    <u>Cash Management System; Control Over Debtors' Accounts</u>.  The Debtors shall maintain their existing cash management system to the extent set forth in the DIP Loan Documents and in accordance with the practices in place immediately prior to the Petition Date unless the DIP Agent, in its sole and absolute discretion, consents in writing to any proposed modification to such cash management system.  The DIP Agent and the Pre-Petition Agents shall be deemed, without any further action of any kind, to have "control" over all of the Debtors' bank accounts within the meaning of Sections 8-106, 9-104, 9-105, 9-106, 9-107 and 9-314 of the Delaware Commercial Code.  All proceeds of the Collateral shall be paid, first, to the First Lien Agent in satisfaction of the First Lien Obligations until all such First Lien Obligations have been indefeasibly paid in full in cash (other than with respect to contingent indemnification obligations as to which no claims have been asserted), and, second, to the DIP Agent in satisfaction of the DIP Obligations until all such DIP Obligations have been indefeasibly paid in full in cash (other than with respect to contingent indemnification obligations as to which no claims have been asserted).

Section 6.    <u>Proof of Claim</u>.  Subjection to Paragraph 9.1 hereof, the First Lien Agent, on behalf of itself and the First Lien Lenders, shall have an allowed claim in the Cases in an amount equal to no less than $39,000,000, exclusive of all accrued and unpaid interest, costs, expenses, and fees owed to the First Lien Agent and First Lien Lenders.  The First Lien Agent shall not be

required to file any proof of claim in the Cases (or any successor cases under title 11) on behalf of the First Lien Lenders setting forth the First Lien Obligations, or any portion thereof. Notwithstanding any provision to the contrary in any order to be entered by the Court concerning the establishment of a bar date in any of the Cases or in any successor cases, the First Lien Agent, on behalf of itself and the First Lien Lenders, is hereby authorized and entitled, in its sole and absolute discretion, but not required, to file (and amend and/or supplement, as it deems appropriate) one or more proofs of claim in each of the Cases or in any successor cases for any claim allowed herein.   Any order entered, or to be entered, by the Court concerning the establishment of a bar date in any of the Cases or in any successor cases shall not apply to the DIP Agent, the DIP Lenders, the First Lien Agent, and the First Lien Lenders.   Subject to Paragraph 9.1 hereof, any and all payments made and accepted by the First Lien Agent, on behalf of the First Lien Lenders, or made directly to the First Lien Lenders, whether pre-petition or post-petition, in connection with the First Lien Obligations or this Interim Order are final and not subject to avoidance or recovery by any Debtor or any other entity under Chapter 5 of the Bankruptcy Code or otherwise.

Section 7.        Default; Rights and Remedies; Relief from Stay.

7.1        Events of Default.   The occurrence of any of the following events shall constitute an "**Event of Default**" under this Interim Order and the DIP Loan Documents:

a.        one or more of the Cases shall be dismissed or converted to a case under Chapter 7 of the Bankruptcy Code;

b.        any Debtor shall file or otherwise support a motion, or other pleading, seeking conversion or dismissal of any of any of the Cases under Section 1112 of the Bankruptcy Code, or otherwise;

c.        a trustee under Chapter 11 of the Bankruptcy Code, a responsible officer or an examiner with enlarged powers relating to the operation of the Debtors' business (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) shall be appointed or elected under Section 1106 of the Bankruptcy

31

Code in any of the Cases;

        d.     any other superpriority administrative expense claim which is senior to or *pari passu* with the Superpriority Claim or the First Lien Adequate Protection Claims shall be granted;

        e.     the Interim Order or the Final Order, as the case may be, shall be stayed, amended, modified, supplemented, reversed, revoked or vacated;

        f.     the Debtors seek any extension or modification of this Interim Order without obtaining the DIP Agent's written consent, which consent may be withheld in the DIP Agent's sole and absolute discretion;

        g.     (i) the Debtors shall assert in any pleading filed in any court that any material provision of this Interim Order is not valid and binding for any reason, or (ii) any material provision of this Interim Order shall, for any reason, cease to be valid and binding without the prior written consent of the DIP Agent, which consent may be withheld in the DIP Agent's sole and absolute discretion;

        h.     the Debtors' failure to obtain entry of a Final Order within thirty (30) days after entry of the Interim Order;

        i.     a plan of reorganization or liquidation shall be confirmed in any of the Cases which does not provide for termination of the commitment under the DIP Facility and payment in full of the DIP Obligations and the First Lien Obligations in cash on the effective date of such plan;

        j.     the entry of an order dismissing any of the Cases that does not provide for the termination of the commitment under the DIP Facility and payment in full of the DIP Obligations and the First Lien Obligations in cash prior to dismissal;

        k.     (i) the commencement of any action against the DIP Agent, any DIP Lender, First Lien Agent or any First Lien Lender, or their respective agents, advisors or employees, to subordinate or avoid any liens or claims that arose in connection with the DIP Loan Documents or First Lien Loan Documents or (ii) the

Committee or another party in interest asserts or seeks leave to file, assert or commence a Challenge;

l.       the Debtors shall take any action, including the filing of any document with the Court, in support of any of the foregoing, or any person other than the Debtors shall take any such action and such action is not contested in good faith by the Debtors;

m.       the entry of an order of the Court granting relief from the automatic stay to the holder of any claim against one or more of the Debtors (other than a claim for personal injury that is covered by liability insurance) equal to or exceeding $250,000;

n.       the Debtors' failure to timely achieve any of the Sale Milestones;

o.       the Debtors' failure to obtain approval of an updated Budget pursuant to Paragraph 1.4 of this Interim Order;

p.       the Debtors' actual receipts in any trailing two-week period following the first week after entry of the Interim Order are less than 90% of the projected amount set forth in the approved Budget covering that period;

q.       if any material contract of the Debtors is rejected or otherwise terminated or modified or not renewed, or any counterparty to a material contract suspends or diminishes its utilization of the benefits of such contract, in either case, in a manner that is disadvantageous to the Debtors' operations or prospects, or any material property of the Debtors is sold, in each instance, without the express written consent of the DIP Agent in its sole and absolute discretion;

r.       any Debtor's breach, in any respect, of any of the terms, conditions, covenants or obligations under this Interim Order, including the disbursements limitations set forth in Paragraph 1.2 of this Interim Order; provided, that the failure to comply with a term or condition of any Pre-Petition Loan Document that is

incorporated into this Interim Order (other than pursuant to Section 5 of this Interim Order) shall not be an Event of Default unless it is not cured within three (3) business days after the Debtors have been notified of such breach; or

s.      any other Event of Default under the DIP Credit Agreement or any of the other DIP Loan Documents.

7.2    Rights and Remedies Upon Event of Default.  Upon the occurrence of and during the continuance of an Event of Default, (i) the Debtors shall be bound by all restrictions, prohibitions and other terms as provided in this Interim Order, the DIP Credit Agreement and the other DIP Loan Documents, (ii) the DIP Agent, on behalf of itself and the DIP Lenders, shall be entitled to take any act or exercise any right or remedy as provided in this Interim Order or the DIP Loan Documents, including, without limitation, immediately suspending or immediately terminating the DIP Facility pending further order of the Court, and (iii) the Debtors' right to use Cash Collateral shall thereupon immediately and without further action of any kind terminate pending further order of the Court.  The DIP Agent and the DIP Lenders shall have no obligation to lend or advance any additional funds to or on behalf of the Debtors, or provide any other financial accommodations to the Debtors, immediately upon or after the occurrence of an Event of Default or upon the occurrence of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute an Event of Default.

7.3    Expiration of Commitment.  Upon the earlier of (i) expiration of Borrowers' authority to borrow and obtain other credit accommodations from the DIP Agent and the DIP Lenders pursuant to the terms of this Interim Order and the DIP Loan Documents (except if such authority shall be extended with the prior written consent of the DIP Agent in its sole and absolute discretion, which consent shall not be implied or construed from any action, inaction or acquiescence by the DIP Agent or any DIP Lender), and (ii) the occurrence of an Event of Default set forth in Paragraph 7.1 above, all of the DIP Obligations shall automatically become due and payable and the DIP Agent and the DIP Lenders shall be automatically and completely relieved from the effect of any stay under Section 362 of the Bankruptcy Code, any

other restriction on the enforcement of their liens upon and security interests in the Collateral or any other rights granted to the DIP Agent and the DIP Lenders pursuant to the terms and conditions of the DIP Loan Documents or this Interim Order, and the DIP Agent, acting on behalf of itself and the other the DIP Lenders, shall be and is hereby authorized, in its sole discretion, to take any and all actions and remedies provided to them in this Interim Order, the DIP Loan Documents or applicable law which the DIP Agent may deem appropriate and to proceed against and realize upon the Collateral or any other property of the Debtors' Estates following five (5) business days' notice of the Event of Default to the Debtors, the Pre-Petition Agents, the Committee (if appointed) and the U.S. Trustee, unless the Event of Default is cured within the five (5) business day notice period or unless an order of the Court is entered determining that no Event of Default occurred or that an Event of Default occurred but that it has been cured.

7.4    Relief from Automatic Stay.  The automatic stay provisions of Section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application or order of the Court to the extent necessary to permit the DIP Agent, acting on behalf of itself and the DIP Lenders, and the Pre-Petition Agents, acting on behalf of themselves and the Pre-Petition Lenders, to perform any act authorized or permitted under or by virtue of this Interim Order or the DIP Loan Documents, as applicable, including, without limitation, (a) to implement the post-petition financing arrangements authorized by this Interim Order and pursuant to the terms of the DIP Loan Documents, and (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Collateral or Replacement Collateral.  In addition, and without limiting the foregoing, upon the occurrence of an Event of Default and after providing five (5) business days prior written notice (the "*Enforcement Notice*") to counsel for the Debtors, counsel for the Committee (if appointed) and the U.S. Trustee, unless the Event of Default is cured within the five (5) business day notice period, the DIP Agent, acting on behalf of itself and the DIP Lenders, and the First Lien Agent, acting on behalf of itself and the First

Lien Lenders, shall be entitled to take any action and exercise all rights and remedies provided to them by this Interim Order, the DIP Loan Documents, the First Lien Documents or applicable law as the DIP Agent or First Lien Agent may deem appropriate in their sole discretion to, among other things, proceed against and realize upon the Collateral, Pre-Petition Collateral, or Replacement Collateral or any other assets or properties of Debtors' Estates upon which the DIP Agent, for the benefit of itself and the DIP Lenders, and the First Lien Agent, for the benefit of itself and the First Lien Lenders, have been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all DIP Obligations and the First Lien Obligations.  Within the five (5) business day period, a party in interest may file an emergency motion for a hearing within such period for a determination solely as to whether an Event of Default occurred under this Interim Order and the DIP Loan Documents or as to whether an Event of Default has been cured within such period.

Section 8.     Good Faith.  The terms of this Interim Order were negotiated in good faith and at arm's length by and among the Debtors, the DIP Agent, the DIP Lenders, the First Lien Agent, and the First Lien Lenders.  The DIP Agent, the DIP Lenders, the First Lien Agent, and the First Lien Lenders shall be entitled to the full protections of Section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.  Accordingly, if any or all of the provisions of this Interim Order are hereafter modified, vacated, or stayed, such modification, vacation, or stay shall not affect, prejudice or impair (a) the validity of any obligation, indebtedness or liability incurred by the Debtors to the DIP Agent, the DIP Lenders, the First Lien Agent, and the First Lien Lenders under this Interim Order and the DIP Loan Documents, as applicable, before the effective date of such modification, vacation or stay, or (b) the validity or enforceability of any security interest, lien, priority, or other protection authorized or created hereby.  Notwithstanding any such modification, vacation, or stay, any indebtedness, obligations or liabilities incurred by the Debtors to the DIP Agent, the DIP Lenders, the First Lien Agent, and the First Lien Lenders before the effective date of such modification, vacation, or stay shall be governed in all respects

by the original provisions of this Interim Order, and the DIP Agent, the DIP Lenders, First Lien Agent, and First Lien Lenders shall be entitled to all the rights, remedies, privileges and benefits granted herein with respect to all such indebtedness, obligations or liabilities.

Section 9.        Representations; Covenants; and Waivers.

9.1      Reservation of Certain Third Party Rights and Bar of Challenges and Claims.  The Debtors' stipulations, acknowledgments, and agreements set forth in Recital D of this Interim Order (the "*Stipulations*") shall be binding upon the Debtors and their Estates in all circumstances upon entry of this Interim Order.  The Stipulations shall be binding upon all other parties in interest, including the Committee, unless the Committee or any other party in interest (including any Chapter 11 or Chapter 7 trustee) other than the Debtors, *first*, commences, by the earlier of (x) with respect to the Committee, sixty (60) calendar days from the formation of any Committee, and (y) solely if no Committee is formed within thirty (30) days following the Petition Date, with respect to other parties in interest with requisite standing other than the Debtors or the Committee, seventy-five (75) calendar days following the date of entry of this Interim Order (such time period established by the earlier of clauses (x) and (y), as the same may be extended in accordance with this Paragraph 9.1, shall be referred to as the "*Challenge Period*," and the date that is the next calendar day after the termination of the Challenge Period in the event that either (i) no Challenge (as defined below) is properly raised during the Challenge Period, or (ii) with respect only to those parties who properly file a Challenge, such Challenge is fully and finally adjudicated, shall be referred to as the "*Challenge Period Termination Date*"), (A) a contested matter, adversary proceeding, or other action challenging or otherwise objecting to the admissions, stipulations, acknowledgments, agreements, findings, or releases included in the Stipulations, or (B) a contested matter, adversary proceeding, or other action against the First Lien Agent or First Lien Lenders relating to and/or otherwise in connection with the First Lien Obligations, the First Lien Loan Documents, the First Liens, the Pre-Petition Collateral, or the debtor-creditor relationship between any of the First Lien Agent and the First Lien Lenders, including, without limitation, any so-called "lender liability" claims

or defenses, or any counterclaim, set-off, subordination, recharacterization, defense, or avoidance of the First Lien Obligations or First Liens (including, but not limited to, those under Sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code) (clauses (A) and (B), collectively, the "*Challenges*" and, each individually, a "*Challenge*"), and, *second*, obtains a final, non-appealable order in favor of such party in interest sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding, or other action.  If a Chapter 7 trustee or a Chapter 11 trustee is appointed during the Challenge Period, the Challenge Period Termination Date, with respect to such trustee only, shall be the later of (i) seventy-five (75) calendar days following the date of entry of this Interim Order and (ii) the date that is twenty (20) days after the date on which such trustee is appointed.  Except as otherwise expressly provided herein, upon the Challenge Period Termination Date and for all purposes in these Cases and any successor case, (i) all payments made to or for the benefit of the First Lien Agent and the First Lien Lenders pursuant to, or otherwise authorized by, this Interim Order or otherwise (whether made prior to, on, or after the Petition Date) shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense, or avoidance, (ii) any and all such Challenges by any party in interest shall be deemed to be forever released, waived, and barred, (iii) the First Lien Obligations shall be deemed to be a fully-allowed secured claim within the meaning of Section 506 of the Bankruptcy Code, and (iv) the Stipulations, including the release provisions therein, shall be binding on all parties in the Cases, including the Committee. Notwithstanding the foregoing, to the extent any Challenge is timely asserted in any such contested matter, adversary proceeding, or other action, the Stipulations and the other provisions in clauses (i) through (iv) in the immediately preceding sentence shall nonetheless remain binding and preclusive on all parties in the Cases, including the Committee, from and after the Challenge Period Termination Date, except to the extent that such Stipulations or the other provisions in clauses (i) through (iv) of the immediately preceding sentence were expressly and successfully challenged in such contested matter, adversary proceeding, or other action.  The Challenge Period may be extended only with the written consent of the First Lien Agent and the

First Lien Lenders, in their sole and absolute discretion.  Notwithstanding any provision to the contrary herein, nothing in this Interim Order shall be construed to grant standing on any party in interest, including the Committee, to bring any Challenge on behalf of the Debtors' Estates.  The failure of any party in interest, including the Committee, to obtain an order of this Court granting standing to bring any Challenge on behalf of the Debtors' Estates prior to the expiration or termination of the Challenge Period shall not be a defense to failing to commence a Challenge prior to the Challenge Period Termination Date as required under this Paragraph 9.1.  In the event of a successful Challenge, the Estate shall be entitled to appropriate relief, if any, under the Bankruptcy Code and applicable law.

   9.2 <u>Debtors' Waivers</u>.  At all times during the Cases, and whether or not an Event of Default has occurred, the Debtors irrevocably waive any right that they may have to seek authority (i) to use Cash Collateral of the DIP Agent, the DIP Lenders, the First Lien Agent, and the First Lien Lenders under Section 363 of the Bankruptcy Code, (ii) to obtain post-petition loans or other financial accommodations pursuant to Section 364(c) or 364(d) of the Bankruptcy Code, other than from the DIP Agent, the DIP Lenders, the First Lien Agent, and the First Lien Lenders, unless such post-petition loans or other financial accommodations provide for the indefeasible payment in cash in full and final satisfaction of all DIP Obligations and all First Lien Obligations upon closing, (iii) to challenge the application of any payments authorized by this Interim Order as pursuant to Section 506(b) of the Bankruptcy Code, (iv) to propose, support or have a plan of reorganization or liquidation that does not provide for the indefeasible payment in cash in full and final satisfaction of all DIP Obligations and all First Lien Obligations on the effective date of such plan, or (v) to seek relief under the Bankruptcy Code, including without limitation, under Section 105 of the Bankruptcy Code, to the extent any such relief would directly restrict or impair the rights and remedies of the DIP Agent, the DIP Lenders, the First Lien Agent, or the First Lien Lenders under this Interim Order, the DIP Loan Documents, and the First Lien Documents or the DIP Agent's, the DIP Lenders', the First Lien Agent's and the First Lien Lenders' exercise of such rights or remedies; provided, however, that the DIP Agent

and the First Lien Agent, in their sole and absolute discretion, may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, any DIP Lender, the First Lien Agent, or any First Lien Lender.

9.3     Section 506(c) Claims.    No costs or expenses of administration which have or may be incurred in the Cases at any time (i) between the entry of the Interim Order and the Final Order, and (ii) subject to the entry of the Final Order, any time after the entry of the Final Order, shall be charged against the DIP Agent, the DIP Lenders, the First Lien Agent, the First Lien Lenders, their respective claims or interests, the Collateral, the Pre-Petition Collateral and/or the Replacement Collateral pursuant to Section 506(c) of the Bankruptcy Code or otherwise without the prior written consent of the DIP Agent and First Lien Agent in their sole and absolute discretion, and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Agent, any DIP Lender, the First Lien Agent, or any First Lien Lender.

9.4     Collateral Rights.    Until all of the DIP Obligations and First Lien Obligations shall have been indefeasibly paid and satisfied in full:

9.4.1    no party other than the DIP Agent or First Lien Agent shall foreclose or otherwise seek to enforce any lien or claim in any Collateral, Pre-Petition Collateral, or Replacement Collateral; and

9.4.2    upon and after the occurrence of an Event of Default, and subject to the DIP Agent providing the Enforcement Notice, the DIP Agent and the First Lien Agent (or any of their employees, agents, consultants, contractors or other professionals), on behalf of themselves and the DIP Lenders and First Lien Lenders, shall have the right to: (i) enter upon, occupy and use any property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by Debtors, and (ii) use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of Debtors, which are owned by or subject to a lien of any third party and which are used by Debtors in their businesses.

Section 10.     Other Rights and Obligations.

10.1     No Modification or Stay of This Interim Order.  Notwithstanding (i) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Interim Order, the DIP Loan Documents or any term hereunder or thereunder, (ii) the failure to obtain a Final Order pursuant to Bankruptcy Rule 4001(c)(2), or (iii) the dismissal or conversion of one or more of the Cases (each, a "***Subject Event***"), (x) the acts taken by the DIP Agent, the DIP Lenders, the First Lien Agent, and the First Lien Lenders in accordance with this Interim Order, and (y) the DIP Obligations incurred or arising, in each case prior to the DIP Agent's and the First Lien Agent's actual receipt of written notice from Debtors expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this Interim Order, and the acts taken by the DIP Agent, the DIP Lenders, the First Lien Agent, and the First Lien Lenders in accordance with this Interim Order, and the liens granted to the DIP Agent, the DIP Lenders, the First Lien Agent, and the First Lien Lenders in the Collateral and Replacement Collateral, and all other rights, remedies, privileges, and benefits in favor of the DIP Agent, the DIP Lenders, the First Lien Agent, and the First Lien Lenders pursuant to this Interim Order and the DIP Loan Documents, as applicable, shall remain valid and in full force and effect pursuant to Section 364(e) of the Bankruptcy Code.  For purposes of this Interim Order, the term "appeal", as used in Section 364(e) of the Bankruptcy Code, shall be construed to mean any proceeding for reconsideration, amending, rehearing, or re-evaluating this Interim Order by this Court or any other tribunal.

10.2     Power to Waive Rights; Duties to Third Parties.  Subject to Paragraph 9.1 hereof, the DIP Agent and the DIP Lenders, in their sole and absolute discretion, shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Interim Order in respect of the DIP Agent and the DIP Lenders (the "***DIP Lender Rights***"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Right(s).  Any waiver by the DIP Agent or any DIP Lender of any DIP Lender Rights shall not be or constitute a continuing waiver.  Any delay

in or failure to exercise or enforce any DIP Lender Right shall neither constitute a waiver of such DIP Lender Right, subject the DIP Agent or any DIP Lender to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert a defense to any obligation owed by the Debtors to the DIP Agent or any DIP Lender.

10.3    Disposition of Collateral.    The Debtors shall not, except in the ordinary course of business, sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral, Pre-Petition Collateral or Replacement Collateral without the prior written consent of the DIP Agent and First Lien Agent in their sole and absolute discretion (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Agent, any DIP Lender, First Lien Agent, or any First Lien Lender) and an order of this Court.  The Debtors shall not, without the consent of the DIP Agent and First Lien Agent in their sole and absolute discretion, (a) enter into any agreement to return any goods to any of their creditors for application against any pre-petition indebtedness under any applicable provision of Section 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its pre-petition indebtedness based upon any such return pursuant to Section 553(b)(1) of the Bankruptcy Code or otherwise.

10.4    Reservation of Rights.    The terms, conditions and provisions of this Interim Order are in addition to and without prejudice to the rights of the DIP Lenders and the DIP Agent, on behalf of itself and the DIP Lenders, and the First Lien Lenders and the First Lien Agent, on behalf of itself and the First Lien Lenders, to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Loan Documents, the First Lien Loan Documents, or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of Cash Collateral or granting of any interest in the Collateral, Pre-Petition Collateral or Replacement Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or

payment of compensation of professionals or other parties seeking compensation or reimbursement from the Estates.

        10.5    <u>Binding Effect of Interim Order</u>.

        10.5.1  Immediately upon entry by this Court, this Interim Order shall be valid and binding upon and inure to the benefit of the DIP Agent, the DIP Lenders, the Pre-Petition Agents, the Pre-Petition Lenders, the Debtors and the property of the Debtors' Estates, all other creditors of any of the Debtors, the Committee, and all other parties in interest and their respective successors and assigns (including any Chapter 11 or Chapter 7 trustee or any other fiduciary hereafter appointed as a legal representative of the Debtors), in any of the Cases, any successor cases, or upon dismissal of any Case or successor case.

        10.5.2  Any order dismissing one or more of the Cases under Section 1112 of the Bankruptcy Code or otherwise shall be deemed to provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (a) the Carve Out Expenses, Superpriority Claim, the DIP Liens, the DIP Obligations, the Pre-Petition Lender Replacement Liens, and the Pre-Petition Lender Adequate Protection Claims shall continue in full force and effect notwithstanding such dismissal until the Carve Out Expenses, DIP Obligations and Pre-Petition Obligations, as applicable, are indefeasibly paid and satisfied in full, and (b) this Court shall retain jurisdiction to the greatest extent permitted by applicable law, notwithstanding such dismissal, for the purposes of enforcing the Carve Out Expenses, Superpriority Claim, the DIP Liens, the DIP Obligations, the Pre-Petition Lender Replacement Liens, and the Pre-Petition Lender Adequate Protection Claims.  In the event any court modifies any of the provisions of this Interim Order or the DIP Loan Documents following a Final Hearing (as defined below), (a) such modifications shall not affect (i) the rights or priorities of the Debtors' and the Committee's professionals (with respect to the Carve Out Expenses), the DIP Agent, the DIP Lenders, the First Lien Agent, or the First Lien Lenders pursuant to this Interim Order with respect to the Collateral, Pre-Petition Collateral, and Replacement Collateral, or (ii) any portion of the DIP Obligations which arises or is incurred or

is advanced prior to such modifications, and (b) this Interim Order shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

10.6    <u>Restrictions on Cash Collateral Use, Additional Financing, Plan Treatment</u>.  All post-petition advances and other financial accommodations under the DIP Credit Agreement are made in reliance on this Interim Order.  There shall not at any time be entered in the Cases, or in any subsequently converted case under Chapter 7 of the Bankruptcy Code, any order (other than the Final Order) which (a) authorizes the use of Cash Collateral of the Debtors in which the DIP Agent or the DIP Lenders have an interest, or the sale, lease, or other disposition of property of any Debtor's Estate subject to a lien or security interest granted to the DIP Agent for the benefit of the DIP Lenders, or (b) authorizes under Section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which the DIP Agent, for the benefit of the DIP Lenders, holds a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to the DIP Agent, for the benefit of the DIP Lenders, herein; unless, in each instance (i) the DIP Agent shall have given its express prior written consent with respect thereto (such consent to be in the DIP Agent's sole and absolute discretion), no such consent being implied from any other action, inaction or acquiescence by the DIP Agent or any DIP Lender, or (ii) such other order requires that all DIP Obligations shall first be indefeasibly paid and satisfied in full in accordance with the terms of the DIP Credit Agreement and the other DIP Loan Documents, including, without limitation, all debts and obligations of the Debtors to the DIP Agent and the DIP Lenders which arise or result from the obligations, loans, security interests and liens authorized herein, on terms and conditions acceptable to the DIP Agent.  Moreover, there shall not at any time be entered in the Cases, or in any subsequently converted case under Chapter 7 of the Bankruptcy Code, any order (other than the Final Order) which (a) authorizes the use of Cash Collateral of the Debtors in which the First Lien Agent or the First Lien Lenders have an interest, or the sale, lease, or other disposition of property of any Debtor's Estate subject to a lien or security interest granted

to the First Lien Agent for the benefit of the First Lien Lenders, or (b) authorizes under Section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which the First Lien Agent, for the benefit of the First Lien Lenders, holds a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to the First Lien Agent, for the benefit of the First Lien Lenders, herein; unless, in each instance (i) the First Lien Agent shall have given its express prior written consent with respect thereto (such consent to be in the First Lien Agent's sole and absolute discretion), no such consent being implied from any other action, inaction or acquiescence by the First Lien Agent or any First Lien Lender, or (ii) such other order requires that all First Lien Obligations shall first be indefeasibly paid and satisfied in full in accordance with the terms of the First Lien Credit Agreement and the other First Lien Loan Documents, including, without limitation, all debts and obligations of the Debtors to the First Lien Agent and the First Lien Lenders which arise or result from the obligations, loans, security interests and liens authorized herein, on terms and conditions acceptable to the First Lien Agent.  The security interests and liens granted to or for the benefit of the DIP Lenders and First Lien Lenders hereunder and the rights of the DIP Agent, the DIP Lenders, First Lien Agent, and First Lien Lenders pursuant to this Interim Order shall not be altered, modified, extended, impaired, or affected by any plan of reorganization or liquidation of Debtors without the express prior written consent of the DIP Agent or First Lien Agent, as applicable (such consent to be in their respective sole and absolute discretion).

      10.7   <u>No Owner/Operator Liability</u>.  In determining to make any loan under the DIP Credit Agreement or any Financing Order, or in exercising any rights or remedies as and when permitted pursuant to the DIP Credit Agreement or any Financing Order, the DIP Agent, the DIP Lenders, First Lien Agent, and First Lien Lenders shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms,

are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq*., as amended, or any similar federal or state statute).

10.8    Marshalling.  In no event shall the DIP Agent, any DIP Lender, First Lien Agent, or any First Lien Lender be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral, Pre-Petition Collateral, or Replacement Collateral. The DIP Agent, the DIP Lenders, the First Lien Agent, and the First Lien Lenders shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the DIP Agent, the DIP Lenders, the First Lien Agent, and the First Lien Lenders with respect to proceeds, products, offspring or profits of any of the Collateral, Pre-Petition Collateral, or Replacement Collateral.

10.9    Term; Termination.  Notwithstanding any provision of this Interim Order to the contrary, the term of the financing arrangements among Debtors, the DIP Agent and the DIP Lenders authorized by this Interim Order may be terminated pursuant to the terms of the DIP Credit Agreement.

10.10    Objections Overruled.  All objections to the entry of this Interim Order are, to the extent not withdrawn or resolved, hereby overruled.

Section 11.    Findings and Conclusions.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

Section 12.    Interim Order Governs.  In the event that any provision of this Interim Order conflicts with any term of the DIP Loan Documents this Interim Order shall govern.

Section 13.    No Prejudice.  This Interim Order shall not prejudice, impair or adversely affect any of the Pre-Petition Agents' and the Pre-Petition Lien Lenders' rights in connection with any of the Pre-Petition Loan Documents, or the Subordination Agreement, including any third party guarantees.

Section 14.    Retention of Jurisdiction.  The Court has and will retain jurisdiction to interpret and enforce the provisions of this Interim Order.

Section 15.    <u>Final Hearing and Response Dates.</u>  The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for [_____], 2013, at [_____] before this Court (the "***Final Hearing***").  *The Debtors shall promptly serve this Interim Order to the Noticed Parties, and to any other party that has filed a request for notices with this Court and to the Committee after same has been appointed, or Committee counsel, if same shall have filed a request for notice.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) the Debtors, 101 World Drive, Peachtree City, Georgia 30269, Attn: Suzanne Müller, Esq.; (b) proposed counsel for the Debtors, Haynes and Boone, LLP, 1221 McKinney Street, Suite 2100, Houston, Texas 77010, Attn: Kourtney Lyda, Esq.; (c) proposed counsel for the Debtors, Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801, Attn: Christopher A. Ward, Esq., (d) counsel to any statutory committee appointed in the Chapter 11 Cases; (e) counsel to the first lien agent, Klee, Tuchin, Bogdanoff & Stern LLP, 1999 Avenue of the Stars, Thirty-Ninth Floor, Los Angeles, CA 90067-6049, Attn: Michael L. Tuchin, Esq.; (f) the agent to the second lienholders and third lienholders, Wells Fargo Bank, National Association, 625 Marquette Ave., Mac N9311-110, Minneapolis, MN 55479, Attn: Andrew Nyquist; (g) counsel to the agent to the second lienholders and third lienholders, Thompson Hines LLP, 335 Madison Avenue, 12th Floor, New York, NY 10017-4611, Attn: Mildred Quinones-Holmes; and (h) the United States Trustee for Region 3, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801; and shall be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, in each case, to allow actual receipt of the foregoing no later than [_____], prevailing Eastern time.*

Dated: November __, 2013

_____


_____
UNITED STATES BANKRUPTCY JUDGE

## <u>Exhibit 1</u>

**Budget**

**Global Aviation Holdings Inc.**
Weekly Cash Flow Forecast

| Week Ending | Notes | 11/15/2013 | 11/22/2013 | 11/29/2013 | 12/6/2013 | 12/13/2013 | 12/20/2013 | 12/27/2013 | 1/3/2014 | 1/10/2014 | 1/17/2014 | 1/24/2014 | 1/31/2014 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts:** | | | | | | | | | | | | | | |
| Military | | 3,366,818 | 4,842,473 | 6,031,756 | 4,975,244 | 5,735,217 | 5,915,799 | 5,915,799 | 6,131,787 | 5,915,799 | 4,929,458 | 4,929,458 | 5,145,445 | 63,835,053 |
| Commercial | | 2,704,993 | 1,551,853 | 1,944,936 | 1,382,527 | 1,857,253 | 1,276,253 | 1,276,253 | 1,947,221 | 1,341,770 | 1,715,270 | 1,395,867 | 1,715,270 | 20,109,468 |
| Other | | 292,993 | (1,420,012) | 50,000 | 50,000 | 54,381 | 50,000 | 50,000 | 50,000 | 50,000 | 1,856,141 | 800,000 | 311,000 | 2,194,503 |
| **Total Receipts** | | **6,364,804** | **4,974,314** | **8,026,691** | **6,407,771** | **7,646,852** | **7,242,053** | **7,242,053** | **8,129,008** | **7,307,569** | **8,500,869** | **7,125,325** | **7,171,716** | **86,139,024** |
| | | | | | | | | | | | | | | |
| **Disbursements:** | | | | | | | | | | | | | | |
| Aircraft and Engine Leases | | 0 | 0 | 6,250 | 0 | 100,000 | 0 | 0 | 226,250 | 0 | 4,648,477 | 245,000 | 47,250 | 5,273,227 |
| Maintenance | | 180,408 | 149,717 | 120,000 | 1,178,053 | 171,772 | 717,123 | 756,723 | 256,723 | 131,368 | 7,261,263 | 1,420,000 | 1,055,000 | 13,398,150 |
| Compensation and Benefits | | 1,552,313 | 2,119,846 | 1,733,998 | 1,438,408 | 2,037,930 | 1,698,584 | 1,883,827 | 1,278,709 | 2,417,287 | 1,555,917 | 2,107,804 | 618,512 | 20,443,136 |
| Fuel | | 5,883,781 | 1,701,470 | 5,771,354 | 1,560,409 | 1,560,409 | 1,560,409 | 5,581,747 | 1,525,575 | 1,525,575 | 1,525,575 | 1,525,575 | 5,801,764 | 35,523,644 |
| General | | 1,555,794 | 1,626,258 | 1,596,140 | 1,947,486 | 2,651,304 | 1,025,209 | 1,153,208 | 1,521,476 | 2,651,502 | 1,641,532 | 1,230,055 | 1,572,293 | 20,172,257 |
| Restructuring Professional Fees | | 0 | 0 | 0 | 0 | 300,000 | 0 | 0 | 15,000 | 285,000 | 816,000 | 0 | 15,000 | 1,431,000 |
| **Total Disbursements** | | **9,172,296** | **5,597,291** | **9,227,741** | **6,124,356** | **6,821,416** | **5,001,326** | **9,375,505** | **4,823,733** | **7,010,731** | **17,448,764** | **6,528,434** | **9,109,819** | **96,241,413** |
| | | | | | | | | | | | | | | |
| **Net Cash Flow** | | **(2,807,493)** | **(622,977)** | **(1,201,050)** | **283,415** | **825,435** | **2,240,727** | **(2,133,452)** | **3,305,275** | **296,838** | **(8,947,895)** | **596,891** | **(1,938,103)** | **(10,102,389)** |
| | | | | | | | | | | | | | | |
| **Debt Facility Balances** | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| **Pre-Petition First Lien Facility** | | | | | | | | | | | | | | |
| Beginning Balance | | 39,000,000 | 32,635,196 | 27,660,883 | 19,634,191 | 13,226,420 | 5,579,569 | - | - | - | - | - | - | 39,000,000 |
| Less: Post-Petition Receipts | | (6,364,804) | (4,974,314) | (8,026,691) | (6,407,771) | (7,646,852) | (5,579,569) | - | - | - | - | - | - | (39,000,000) |
| **Ending Balance** | | **32,635,196** | **27,660,883** | **19,634,191** | **13,226,420** | **5,579,569** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** |
| | | | | | | | | | | | | | | |
| **DIP Facility** | | | | | | | | | | | | | | |
| Beginning Balance | | - | 6,767,609 | 12,364,900 | 21,592,642 | 27,722,052 | 34,543,468 | 37,882,309 | 40,015,762 | 36,717,516 | 36,420,678 | 45,368,573 | 44,771,681 | - |
| DIP Facility Fees | (1) | 510,000 | - | - | 5,054 | - | - | - | 7,029 | - | - | - | - | 522,083 |
| Excess Cash Sweep | (2) | (2,914,687) | - | - | - | - | - | - | - | - | - | - | - | (2,914,687) |
| Less: Receipts | (3) | - | - | - | - | - | (1,662,484) | (7,242,053) | (8,129,008) | (7,307,569) | (8,500,869) | (7,125,325) | (7,171,716) | (47,139,024) |
| Plus: Disbursements | | 9,172,296 | 5,597,291 | 9,227,741 | 6,124,356 | 6,821,416 | 5,001,326 | 9,375,505 | 4,823,733 | 7,010,731 | 17,448,764 | 6,528,434 | 9,109,819 | 96,241,413 |
| **Ending Balance** | | **6,767,609** | **12,364,900** | **21,592,642** | **27,722,052** | **34,543,468** | **37,882,309** | **40,015,762** | **36,717,516** | **36,420,678** | **45,368,573** | **44,771,681** | **46,709,785** | **46,709,785** |
| | | | | | | | | | | | | | | |
| **Total Pre-Petition and DIP Borrowings** | | **39,402,806** | **40,025,783** | **41,226,833** | **40,948,472** | **40,123,037** | **37,882,309** | **40,015,762** | **36,717,516** | **36,420,678** | **45,368,573** | **44,771,681** | **46,709,785** | **46,709,785** |
| | | | | | | | | | | | | | | |
| **DIP Availability** | (4) | **11,597,194** | **10,974,217** | **9,773,167** | **10,051,528** | **10,876,963** | **13,117,691** | **10,984,238** | **14,282,484** | **14,579,322** | **5,631,427** | **6,228,319** | **4,290,215** | **4,290,215** |
| | | | | | | | | | | | | | | |
| **Cash** | | | | | | | | | | | | | | |
| Beginning Balance | | 3,914,687 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 3,914,687 |
| Less: Excess Cash Sweep | (2) | (2,914,687) | - | - | - | - | - | - | - | - | - | - | - | (2,914,687) |
| **Ending Balance** | | **1,000,000** | **1,000,000** | **1,000,000** | **1,000,000** | **1,000,000** | **1,000,000** | **1,000,000** | **1,000,000** | **1,000,000** | **1,000,000** | **1,000,000** | **1,000,000** | **1,000,000** |
| | | | | | | | | | | | | | | |
| **Cash Plus DIP Availability** | | **12,597,194** | **11,974,217** | **10,773,167** | **11,051,528** | **11,876,963** | **14,117,691** | **11,984,238** | **15,282,484** | **15,579,322** | **6,631,427** | **7,228,319** | **5,290,215** | **5,290,215** |

**Notes**

(1) Includes 1.00% of total DIP Facility commitment (fully earned and payable on the Interim Facility Effective Date) and Unused Line Fee (0.75% per annum of unused borrowings) payable in arrears on a monthly basis

(2) Cash above $1 million swept to Cerberus controlled accounts to repay borrowings

(3) Post-petition receipts are first applied to repay Pre-Petition First Lien Facility and then to the DIP Facility

(4) Calculated as total DIP Facility ($51 million) less Pre-Petition First Lien Facility and net DIP Revolver borrowings outstanding; subject to budget and financial covenant limitations

**Global Aviation Holdings Inc.**
**Professional Fees Budget**

| Role | Provider | Professional Fees Budget | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | Post-Petition | | | | | Completion / | 5-Month |
| | | Nov-13 | Dec-13 | Jan-14 | Feb-14 | Mar-14 | Tail Fees | Total |
| Debtor | | | | | | | | |
| Bankruptcy Counsel | Haynes Boone | $ 500,000 | $ 300,000 | $ 300,000 | $ 250,000 | $ 450,000 | $ 200,000 | $ 2,000,000 |
| Regulatory Counsel | Zuckert, Scoutt | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 50,000 | 175,000 |
| Local Bankruptcy Counsel | Polsinelli | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 210,000 |
| Labor Counsel | Ford & Harrison | 100,000 | 50,000 | 25,000 | - | - | - | 175,000 |
| Fin'l Advisor | Imperial Capital | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 | 1,187,500 | 1,812,500 |
| Claims Agent | KCC | 75,000 | 50,000 | 25,000 | 25,000 | 75,000 | 50,000 | 300,000 |
| Tax / Accounting | Ernst & Young | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | - | 250,000 |
| Aircraft Lease Advisor | Worldwide Aero | 100,000 | 100,000 | 50,000 | - | - | - | 250,000 |
| Expenses | | 50,000 | 25,000 | 12,500 | 12,500 | 25,000 | 50,000 | 175,000 |
| UCC | | | | | | | | |
| Legal | | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | | 250,000 |
| Fin'l Advisor | | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | | 175,000 |
| US Trustee | | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 90,000 |
| **Total Professional Fees / Expenses** | | **$ 1,160,000** | **$ 860,000** | **$ 747,500** | **$ 622,500** | **$ 885,000** | **$ 1,587,500** | **$ 5,862,500** |