IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>GLOBAL AVIATION HOLDINGS INC., et al.,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 13-12945 (MFW)<br><br>Hearing Date: August 12, 2015 at 2:00 p.m. (ET)<br>Objection Deadline: August 5, 2015 at 4:00 p.m. (ET) |

**JOINT MOTION OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS AND THE AIR LINE PILOTS ASSOCIATION INTERNATIONAL FOR ALLOWANCE AND IMMEDIATE PAYMENT OF CERTAIN ADMINISTRATIVE EXPENSE CLAIMS PURSUANT TO SECTIONS 503(a), 503(b)(1)(A), AND 507 OF THE BANKRUPTCY CODE**

The International Brotherhood of Teamsters ("**IBT**") and the Air Line Pilots Association, International ("**ALPA**") (collectively, the "**Unions**"), by and through their undersigned counsel, hereby move (the "**Motion**") for allowance and immediate payment of certain administrative expense claims pursuant to sections 503(a), 503(b)(1)(A), and 507 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"). In support of this Motion, the Unions respectfully state as follows:

## BACKGROUND

**A. General Background**[2]

1. The IBT and ALPA are labor organizations within the meaning of Section 1, Sixth of the Railway Labor Act, as amended, 45 U.S.C. § 151, Sixth (the "**RLA**") and maintain

---

[1] The Debtors in these Chapter 7 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, include: Global Aviation Holdings Inc. (2196); Global Shared Services, Inc. (1692); New ATA Acquisition Inc. (1985); New ATA Investment Inc. (2109); North American Airlines, Inc. (8792); World Air Holdings, Inc. (1036); and World Airways, Inc. (8276).

[2] The Unions incorporate by reference the facts and supporting documentation in the IBT's Motion for Allowance and Payment of Administrative Expense Claims (the "**IBT Admin Claim Motion**") [D.I. 953] and ALPA's Amended Request for Allowance and Payment of Administrative Expense Claims (the "**ALPA Admin Claims Motion**") [D.I. 944; Claim 646].

1

their principal places of business at 25 Louisiana Avenue, N.W., Washington, D.C. 20001 and 1625 Massachusetts Avenue, N.W., Washington, D.C. 20036, respectively.

2.  Pursuant to Section 2, Ninth of the RLA, 45 U.S.C. § 152, ALPA is the certified representative of the pilots formerly employed by North American Airlines, Inc. ("**North American**") and the IBT is the certified representative of the pilots formerly employed by World Airways, Inc. ("**World**") and flight attendants formerly employed by North American and World (the IBT-represented and ALPA-represented former employees are referred to herein collectively as the "**Union Employees**"). The IBT is party to collective bargaining agreements with World and North American, and ALPA is party to a collective bargaining agreement with North American, which, taken together, established the terms and conditions of employment for the Union Employees (the IBT and ALPA collective bargaining agreement are referred to herein collectively as the "**CBAs**"). At no time were the CBAs rejected by the Debtors.

3.  On November 12, 2013 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

4.  Pursuant to the CBAs, World and North American (collectively, the "**Employers**") were required to provide the Union Employees with group medical insurance. The Employers provided these medical benefits through the self-funded Global Aviation Holdings Inc. Welfare Benefit Plan (the "**Health Plan**") and contracted with United HealthCare Insurance Company ("**UHC**") to process medical bills under its negotiated provider rates as the Health Plan's third-party administrator ("**TPA**"). Union Employees contributed part of the cost of the benefits through monthly deductions from their paychecks.

5. On March 25, 2014, Cerberus Business Finance, LLC ("**Cerberus**"), Collateral and Administrative Agent for the Debtors' DIP Financing Agreement, served the Debtors with a notice of default, cut off access to the Debtors' use of their cash collateral and swept the Debtors' bank accounts. As a result, the Employers were unable to maintain the required minimum balances in UHC's accounts or make their required weekly payments, the TPA abruptly ceased processing or paying medical claims, and the Employers informed the Union Employees that the Health Plan would be terminated effective March 31, 2014 (the "**Termination Date**").

6. The Employers' termination of the Health Plan resulted in, *inter alia*, certain Union Employees being billed for the full amount of medical services provided prior to the Termination Date, bills which had not been processed by UHC or paid by the Employers.

7. In March 2014, the Employers also terminated their Long Term Disability Plan ("**LTD Plan**"), depriving Union Employees of the opportunity to apply for benefits to which they were entitled under the CBAs.

8. On May 5, 2014, the Court approved a Forbearance Agreement between the Debtors and Cerberus which sought to address the issue of unpaid employee benefits through the creation of an Employee Benefit Plan Fund Portion (the "**Employee Benefit Fund**") to be funded by a percentage of various receipts and inventory sale proceeds. *See* Order Approving Stipulation Concerning Limited Forbearance Under DIP Financing Order ("**Forbearance Order**") [D.I. 519].

9. The Forbearance Order also set aside forty percent (40%) of the "additional payments" (as that term is used in paragraph 5 of the Omni Letter of Intent) plus five percent (5%) of the Inventory Proceeds (as defined in the Forbearance Stipulation) to be deposited in a segregated account and distributed upon further order of the Court. Id. at ¶ 7(c). As set forth in

Paragraph 5 of the Omni Letter of Intent, these "additional payments" will be made in six-month increments through May 20, 2017. *See* Exhibit A to Motion to Approve Stipulation Filed by Global Aviation Holdings Inc. ("**Omni LOI**") [D.I. 465-1].

10. On July 24, 2014, the Court entered an order approving the disbursement of funds held in the Employee Benefit Fund, now referred to as the "Healthcare Fund." *See* Order Granting Motion of the Debtors for Entry of an Order Approving Disbursement of Funds Allocated to Pay Healthcare Claims ("**Disbursement Order**") [D.I. 698]. The unpaid health claims were to be paid from the Healthcare Fund in the amounts contracted for under the agreements between each provider and the Health Plan's TPA (the "**Plan Responsibility Amount**"). *See* Motion of the Debtors for Entry of an Order Approving Disbursement of Funds Allocated to Pay Healthcare Claims ("**Disbursement Motion**") [D.I. 644].

11. The Disbursement Order also established that the 40% of the "additional payments" set aside in the Omni LOI would be used to create a Remaining Employee Benefit Fund, "designated first for payment of any unpaid employee benefit claims for all employees of the Debtors, if allowed and not otherwise satisfied by the Healthcare Fund, prior to payment of any other claims, and such designation shall be binding upon any subsequent Chapter 7 trustee." Id. at ¶ 4.

12. On September 30, 2014, the Debtors, the IBT, ALPA, UHC and the Official Committee of Unsecured Creditors approved, and this Court entered, an Agreed Upon Order which provides that:

> to the extent that any remaining unpaid claims for medical services provided prior to [the Termination Date] that would have been allowed under the Terminated Healthcare Plan . . . cannot be paid at the UHC Plan Responsibility Amount, such claims shall have first priority in the Remaining Employee Benefit Fund. Such priority shall be binding upon any subsequent chapter 7 trustee.

4

*See* Agreed Upon Order [D.I. 868] at ¶ 4.

13. The Disbursement Order and the Agreed Upon Order both specified that all payments to medical providers shall contain a notice that, upon accepting payment, such medical provider shall be deemed to have accepted payment in full satisfaction of the Unpaid Healthcare Claims. *See* Disbursement Order at ¶ 7, Agreed Upon Order at ¶ 6.

14. On July 17, 2014, former North American pilot David Mares filed an objection ("**Mares Objection**") to the Debtors' motion for distribution of health claim payments. [*See* D.I. 670.] In his filing, Mares explained that in January 2013 he was diagnosed with Parkinson's disease. *See id.* ¶3. He further explained that by 2014 the disease had progressed to the point where he no longer felt he could safely continue to perform his pilot duties. *See id.* ¶8.

15. As a result of the termination of the LTD Plan, Mares was deprived of the opportunity to apply for benefits under the plan.

16. In his July 17, 2014 filing, Mares asserted a claim of $184,786, which he calculated as the difference between the 175 monthly payments of $3,320.92 that he would have been entitled to under the LTD Plan until he reached mandatory retirement age of 65, and the $2,265 maximum in monthly Social Security disability payments to which he may qualify. *See* Mares Objection ¶10. In the Disbursement Order, the Court ordered the distribution of $35,000 to Mares in partial satisfaction of his claim. [D.I. 698, at ¶5]. The order stated further that "[n]othing contained in this Order to the contrary shall preclude Mr. David P. Mares from asserting any remaining balance of the long term disability claim raised in the Mares Objection solely against the funds available in the Remaining Employee Benefit Fund." *Id.*

17. On August 21, 2014, the Debtors filed their Motion for Entry of an Order (I) Converting the Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code, (II) Releasing Kurtzman Carson Consultants, LLC as Claims and Noticing Agent for the Clerk of the Bankruptcy Court, and (III) Granting Related Relief (the "**Conversion Motion**") [D.I. 744].

18. The Court entered an order granting the Conversion Motion and converting the Debtors' Chapter 11 cases to cases under Chapter 7 of the Bankruptcy Code on September 30, 2014. *See* Conversion Order [D.I. 869].

19. On October 1, 2014, the Office of the United States Trustee appointed Alfred T. Giuliano as the Chapter 7 Trustee in the above-captioned cases (the "**Trustee**"). *See* Notice of Appointment [D.I. 871].

20. Subsequent to his appointment, the Trustee established February 12, 2015 as the general bar date in these Chapter 7 cases. *See* Notice of Bar Date [D.I. 883].

21. The Unions have both asserted, *inter alia*, first priority health care claims against the Remaining Employee Benefit Fund on behalf of the Union Employees and, in addition, ALPA asserted a claim against the Remaining Employee Benefit Fund on behalf of Mares. *See* IBT Admin Claims Motion [D.I. 953] and ALPA Admin Claims Motion [D.I. 944; Claim 646].

22. Upon information and belief, there is currently approximately $276,000.00 available in the Remaining Employee Benefit Fund for the payment of employee claims.

23. Upon information and belief, no other creditor has asserted a claim against the Remaining Employee Benefit Fund.

## JURISDICTION AND VENUE

24.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

## RELIEF REQUESTED

25.     By this Motion, the Unions seek the entry of an order granting the allowance and immediate payment, from the Remaining Employee Benefit Fund, of certain Union Employee claims relating to unpaid medical claims for services provided prior to the Termination Date ("**Unpaid Health Claims**") and benefits lost by David Mares under the terminated LTD Plan ("**Unpaid LTD Claim**").

## BASIS FOR RELIEF REQUESTED

26.     Section 503(b) of the Bankruptcy Code provides administrative expense status for the "actual, necessary costs and expenses of preserving the estate . . ." 11 U.S.C. § 503(b)(1)(A). These expenses are afforded priority under section 507(a)(1) of the Bankruptcy Code. 11 U.S.C. § 507(a)(1). Moreover, under section 503(a) of the Bankruptcy Code, "[a]n entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause."

27.     The Union Employees rendered post-petition services to the Debtors that were vital to the Debtors' ability to continue operations and to maximize value for the benefit of all constituents in these cases. Thus, the Union Employees' services were "actual, necessary costs and expenses of preserving the estate" as required for administrative expense status under section 503(b)(1)(A).

28. The Unions seek immediate payment, in full, from the Remaining Employee Benefit Fund, of the Unpaid Health Claims listed in **Exhibit A** to this Motion. These Unpaid Health Claims are unquestionably the types of claims that the Debtors and the Unions sought to address through the Disbursement Order and the Agreed Upon Order. Although the Disbursement Order and the Agreed Upon Order originally provided that medical claims were to be paid at the Plan Responsibility Amount, payment of the Unpaid Health Claims in full is entirely consistent with the underlying purpose of those orders. The parties' intent in creating the Healthcare Fund and granting Unpaid Health Claims first priority in the Remaining Employee Benefit Fund was to ensure that the Debtors' employees would not go into debt as a result of the sudden and unforeseen termination of the Health Plan. The parties further intended that medical providers would accept the Plan Responsibility Amount as payment in full for medical services provided prior to the Termination Date.

29. Unfortunately, this has not proven to be the case for all providers, and some Union Employees continue to face collection efforts with respect to balances remaining on the Unpaid Health Claims. Through no fault of their own, these Union Employees' lives have been disrupted, their savings diminished and their credit impaired. Additionally, some Union Employees have become the targets of collections efforts relating to Unpaid Health Claims for which no payment has yet been made from the Healthcare Fund or the Remaining Employee Benefit Fund. Given the length of time that has elapsed since these medical services were provided and the persistent efforts to recover against these Union Employees, there is no reason to believe that medical providers will now accept the Plan Responsibility Amount as payment in full for these Unpaid Health Claims.

30.     The Unions also seek an additional disbursement, from the Remaining Employee Benefit Fund, of $35,000.00 on behalf of the Unpaid LTD Claim filed on behalf of David Mares. As with the Union Employees struggling with Unpaid Health Claims, the Debtors' unexpected termination of the LTD Plan deprived Mares of benefits to which he would have otherwise been entitled.

31.     The Remaining Employee Benefit Fund was established solely for the payment of employee claims. To date, the Unions are the only creditors who have asserted claims against the Remaining Employee Benefit Fund. Moreover, the Debtors anticipated that the IBT and ALPA would jointly propose a process for distributing funds from the Remaining Employee Benefit Fund to satisfy employee claims. *See* Conversion Motion at Fn. 2 [D.I. 744]. As such, the Unions' joint motion for the allowance and immediate payment, from the Remaining Employee Benefit Fund, of the Unpaid Health Claims set forth in **Exhibit A** and the Unpaid LTD Claim in the amount of $35,000.00, should be granted.

## NOTICE OF MOTION

32.     Notice of this Motion has been given to: (i) counsel to the Trustee; (ii) the Office of the United States Trustee for the District of Delaware; and (iii) any party requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Unions submit that no other or further notice is necessary.

## CONCLUSION

**WHEREFORE**, the Unions respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit B**, granting the Unions' request for: (i) allowed administrative expense claims for the Unpaid Health Claims as set forth in **Exhibit A**, (ii) allowed administrative expense claims for the Unpaid LTD Claim in the amount of

$35,000.00 on behalf of Mares, (iii) immediate payment of the allowed Unpaid Health Claims and Unpaid LTD Claim from the Remaining Employee Benefit Fund and (iv) such other and further relief as the Court deems just and proper.

Dated: July 24, 2015
      Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

_/s/ Mark D. Olivere_
Mark D. Olivere (Bar No. 4291)
1007 North Orange Street, Suite 1110
Wilmington, Delaware 19801
Telephone:   (302) 295-0191
Facsimile:    (302) 295-0199
Email:        olivere@chipmanbrown.com

-and-

LEVY RATNER, P.C.
Ryan J. Barbur (_admitted pro hac vice_)
80 Eighth Avenue, 8th Floor
New York, New York 10011
Telephone:   (212) 627-8100
Facsimile:    (212) 627-8182
Email:        rbarbur@levyratner.com

_Counsel to the International Brotherhood of Teamsters_

**COOCH AND TAYLOR, P.A.**

_/s/ Susan E. Kaufman_
Susan E. Kaufman (Bar No. 3381)
The Brandywine Building
1000 West Street, 10th Floor
Wilmington, Delaware 19801
Telephone:   (302) 984-3820
Facsimile:    (302) 984-3939
Email:        skaufman@coochtaylor.com

-and-

**COHEN WEISS AND SIMON LLP**
Peter D. DeChiara
330 West 42nd Street
New York, New York 10036-6976
Telephone:    (212) 356-0216
Facsimile:    (646) 473-8216
Email:    pdechiara@cwsny.com

*Counsel to the Air Line Pilots Association, International*