**Exhibit A**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between Alfred T. Giuliano, solely as chapter 7 trustee (the "Trustee") for the estates of Global Aviation Holdings, Inc., *et al.* (the "Debtors"),[1] and not in any individual capacity, on the one hand, and AeroTurbine, Inc. ("AeroTurbine"), on the other hand. AeroTurbine and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on November 12, 2013 (the "Petition Date"), the Debtors each commenced a case (the "Chapter 11 Cases") by filing a voluntary petition for relief in the United States Bankruptcy Court for the District of Delaware (the "Court") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"); and

WHEREAS, on September 30, 2014, the Court entered an order converting the Chapter 11 Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code; and

WHEREAS, on October 1, 2014, Alfred T. Giuliano was appointed as the Trustee; and

WHEREAS, the Debtors and AeroTurbine had various business relationships prior to the Petition Date; and

WHEREAS, on August 17, 2015, the Trustee made demand upon AeroTurbine (the "Demand") asserting, *inter alia*, that the Trustee is entitled to avoid and recover from AeroTurbine pursuant to Bankruptcy Code sections 547 and 550 alleged preferential transfers

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Global Aviation Holdings, Inc. (2196); Global Shared Services, Inc. (1692); New ATA Acquisition Inc. (1985); New ATA Investment Inc. (2109); North American Airlines, Inc. (8792); World Air Holdings, Inc. (1036); and World Airways, Inc. (8276). The Debtors' corporate address is 101 World Drive, Peachtree City, Georgia 30269.

{37222075;1}

(the "Preferential Transfers") made by World Airways, Inc., to AeroTurbine in an amount not less than $669,035.14 during the 90-day period prior to the Petition Date; and

WHEREAS, rather than proceed with litigation concerning the Preferential Transfers and the Demand, the Parties engaged in good faith, arms' length negotiations to resolve the Preferential Transfers and the Demand in their entireties;

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.    **Recitals.**  The recitals set forth above are incorporated herein by reference.

2.    **Settlement Amount.**  On or before January 25, 2016, AeroTurbine shall pay to the Trustee the total sum of $22,500.00 (twenty-two thousand five hundred dollars and zero cents) in full and complete settlement of the Preferential Transfers, including attorneys' fees and costs associated with the Demand (the "Settlement Amount").  The Settlement Amount shall be wired as follows:

**Wiring instructions:**

| | |
|---|---|
| Receiving Bank: | Rabobank, N.A. |
| | Specialty Deposits |
| | 90 E. Thousand Oaks Blvd., Ste 300 |
| | Thousand Oaks, CA 91360 |
| ABA Number (for domestic wires): | 122237159 |
| SWIFT (for foreign wires): | RABOUS66 |
| Trustee: | Alfred T. Giuliano, Chapter 7 Trustee |
| Account No. to Receive Funds: | 5012084566 |
| Case Name: | World Airways, Inc. |
| Case Number: | 13-12949 |

3.    **Settlement Effective Date.**  The effective date of this Settlement Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) the date an

order approving this Settlement Agreement is entered by the Court, or (iii) payment of the Settlement Amount (the "Settlement Effective Date").

4.    **Dismissal with Prejudice.**  Within seven (7) days following the Settlement Effective Date, the Adversary Proceeding shall be dismissed with prejudice.

5.    **Claims Waiver, Retention, and Reservation of Rights.**  Subject to the following reservation, AeroTurbine hereby waives any and all claims in the cases of the Debtors, including but not limited to any filed proof of claim or scheduled claim, and waives the right to file or assert any claim under section 502(h) of the Bankruptcy Code (the "Waived Claims"). The Waived Claims expressly excludes the administrative claim fixed in accordance with the *Agreed Order Resolving AeroTurbine, Inc.'s Motion for Allowance of Administrative Claim* [Docket No. 560], which allowed administrative claim shall not be subject to further objection by the Trustee.

6.    **Trustee's Limited Release.**  Effective on the Settlement Effective Date, the Trustee solely in his capacity as Trustee, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged AeroTurbine, its attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "AeroTurbine Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee has,

have had, may have or may claim to have against the AeroTurbine Releasees solely in connection with the Demand and the Preferential Transfers.

7.    **AeroTurbine's Limited Release.**  With the exception of the administrative claim fixed in accordance with the *Agreed Order Resolving AeroTurbine, Inc.'s Motion for Allowance of Administrative Claim* [Docket No. 560], effective on the Settlement Effective Date, the AeroTurbine Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trustee, the Debtors, their past or present attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the AeroTurbine Releasees has, have had, may have or may claim to have against any of the Trustee Releasees solely in connection with the Demand and the Preferential Transfers.

8.    **No Admissions.**  This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the Demand or the Preferential Transfers.

9.    **Expenses.**  The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the Demand and this Settlement Agreement.  In the event of any dispute in connection with the enforcement of this Settlement Agreement, the prevailing Party shall be entitled to its reasonable attorneys' fees, costs and all necessary

disbursements and out-of-pocket expenses, whether statutorily approved or non-approved costs, incurred in connection with such action or proceeding, as determined by the Court.

10.    **Severability.**  The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement.  The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

11.    **Miscellaneous.**

(a)    Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)    Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)    No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(d)    This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e)    This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)    The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)    If this Settlement Agreement is not approved by the Court, then the Settlement Agreement shall be null and void and of no force or effect, and the Trustee shall return the Settlement Amount to the Defendant within ten (10) days after the Court declines to approve the Settlement Agreement. In such event, each of the Parties shall be returned to the Parties' position *status quo ante*, and the Parties reserve all of their respective rights, claims, and defenses with respect to all of the matters set forth herein.

(h)    Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date. Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(i)    Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority

to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement.  The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(j)    In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(k)    The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(l)    This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(m)    This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(n)    The Parties each agree to indemnify the other for any and all costs incurred as a result of any breach of any representation, warranty, or covenant set forth in this

Settlement Agreement, including, without limitation, court costs and reasonable attorneys' fees and expenses.

       (o)    The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

       IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s) set forth below:

ACCEPTED AND AGREED TO BY:

ALFRED T. GIULIANO,
CHAPTER 7 TRUSTEE

By: _____              2/10 , 2016
Alfred T. Giuliano, solely in his capacity as
Chapter 7 Trustee of Global Aviation Holdings,
Inc., *et al.*

AEROTURBINE, INC.

By: _____
Name: David Crull
Title: Chief Financial Operator          Jan 25 , 2016