## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| GLOBAL AVIATION HOLDINGS INC., et al., | Case No. 13-12945 (MFW) |
| Debtors.[1] | Hearing Date:  December 3, 2019 at 2:00 p.m. (ET)<br>Objection Deadline:  November 26, 2019 at 4:00 p.m. (ET) |

### JOINT MOTION OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS AND THE AIR LINE PILOTS ASSOCIATION INTERNATIONAL FOR ALLOWANCE AND IMMEDIATE PAYMENT OF CERTAIN ADMINISTRATIVE EXPENSE CLAIMS FROM THE REMAINING EMPLOYEE BENEFIT FUND PURSUANT TO SECTIONS 503(a), 503(b)(1)(A), AND 507 OF THE BANKRUPTCY CODE

The International Brotherhood of Teamsters ("**IBT**") and the Air Line Pilots Association, International ("**ALPA**") (collectively, the "**Unions**"), by and through their undersigned counsel, hereby move (the "**Joint Motion**") for allowance and immediate payment of certain administrative expense claims pursuant to sections 503(a), 503(b)(1)(A), and 507 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**").   In support of this Motion, the Unions respectfully state as follows:

### BACKGROUND

A.    GENERAL BACKGROUND[2]

1.    The IBT and ALPA are labor organizations within the meaning of Section 1, Sixth of the Railway Labor Act, as amended, 45 U.S.C. § 151, Sixth (the "**RLA**") and maintain

---

[1]    The Debtors in these Chapter 7 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, include: Global Aviation Holdings Inc. (2196); Global Shared Services, Inc. (1692); New ATA Acquisition Inc. (1985); New ATA Investment Inc. (2109); North American Airlines, Inc. (8792); World Air Holdings, Inc. (1036); and World Airways, Inc. (8276).

[2]    The Unions incorporate by reference the facts and supporting documentation in the IBT's Motion for Allowance and Payment of Administrative Expense Claims (the "**IBT Admin Claims Motion**") [D.I. 953] and ALPA's Amended Request for Allowance and Payment of Administrative Expense Claims (the "**Amended ALPA Admin Claims Motion**") [D.I. 944].

their principal places of business at 25 Louisiana Avenue, N.W., Washington, D.C. 20001 and 1625 Massachusetts Avenue, N.W., Washington, D.C. 20036, respectively.

2.      Pursuant to Section 2, Ninth of the RLA, 45 U.S.C. § 152, ALPA is the certified representative of the pilots formerly employed by North American Airlines, Inc. ("**North American**") and the IBT is the certified representative of the pilots formerly employed by World Airways, Inc. ("**World**") and flight attendants formerly employed by North American and World (the IBT-represented and ALPA-represented former employees are referred to here collectively as the "**Union Employees**").  The IBT is party to collective bargaining agreements with World and North American, and ALPA is party to a collective bargaining agreement with North American, which, taken together, established the terms and conditions of employment for the Union Employees (the IBT and ALPA collective bargaining agreements are referred to here collectively as the "**CBAs**").  At no time were the CBAs rejected by the Debtors.

3.      On November 12, 2013 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

4.      The Union Employees rendered Post-Petition services to the Debtors that were vital to the Debtors' ability to continue operations and to maximize value for the benefit of all constituents in these cases.

5.      On March 25, 2014, Cerberus Business Finance, LLC ("**Cerberus**"), Collateral and Administrative Agent for the Debtors' DIP Financing Agreement, served the Debtors with a notice of default, cut off access to the Debtors' use of their cash collateral and swept the Debtors' bank accounts (the "**Default**").  As a result, the Debtors were unable to continue operations, resulting in the termination of the Union employees.

6.      On April 21, 2014, the Debtors filed a motion to approve a stipulation between the Debtors and Cerberus which provided for a limited reinstatement of the Debtors' use of cash collateral in order to fund the sale of North American's assets to Omni Air International ("**Omni**") pursuant to a finalized letter of intent (the "**Omni LOI**") and fund an orderly wind-down of the Debtors' businesses.  *See* Motion of the Debtors for Entry of an Order Approving Stipulation Concerning Limited Forbearance Under DIP Financing Order and Consent and Authorization to Continue Using Cash Collateral ("**Forbearance Motion**") [D.I. 465]; Stipulation Between Cerberus Business Finance, LLC and the Debtors Concerning Receipts and Funding Pending Sale of Debtors' Assets ("**Forbearance Stipulation**") [D.I. 465-2].

7.      Pursuant to the Forbearance Stipulation, the Debtors were required to remit to Cerberus all payments that they became entitled to under paragraph 5 of the Omni LOI, for application to amounts outstanding under the DIP Financing Agreement.  *See* Forbearance Stipulation, at ¶ 2 [D.I. 465-2].

8.      The Forbearance Stipulation also designated 3% of the proceeds from the sale of the Debtors' Inventory (net of commissions and taxes) and 3% of the Debtors' collections on post-Default Receipts to create a fund for certain unpaid employee benefits (the "**Employee Benefit Fund**").  Id. at ¶ 3(b).

9.      The Official Committee of Unsecured Creditors (the "**Committee**") filed a limited objection to the Forbearance Motion, arguing, *inter alia*, that the continued operations necessary to effectuate the Omni sale could be construed as continuing violations of ALPA's CBA.  *See* Limited Objection of the Official Committee of Unsecured Creditors to the Forbearance Motion, at ¶¶ 2-4 [D.I. 488].  In order to avoid jeopardizing these necessary operations, the Committee suggested that the Forbearance Stipulation be amended to free up

additional funds to remedy the Debtors' violations of the furlough provisions of the ALPA CBA. Id. at ¶ 4.

10.     The IBT also filed a response to the Forbearance Motion, arguing that the amounts committed to the Employee Benefit Fund under the Forbearance Stipulation were insufficient to even cover the costs incurred by the Union Employees due to unpaid medical claims that were being processed when the Debtors' self-funded health insurance plan was abruptly terminated as a result of Cerberus sweeping the Debtors' accounts. *See* Response of the IBT to the Forbearance Motion [D.I. 490].

11.     On May 5, 2014, the Court entered an Order approving the Forbearance Stipulation as modified pursuant to a consensual agreement between the Debtors, Cerberus and various objecting and interested parties, including the IBT and ALPA. *See* Order Approving Stipulation Concerning Limited Forbearance Under DIP Financing Order ("**Forbearance Order**") [D.I. 519].

12.     The Forbearance Order provided for the sum of $654,000.00 from the proceeds of the Omni sale to be segregated and used to partially satisfy certain post-Petition ALPA grievances. Id. at ¶ 7(a).  The Forbearance Order also provided that ALPA would be entitled to submit additional requests for payment of administrative expense claims, to the extent that the post-Petition ALPA grievances were not fully satisfied by this payment. *Id.*

13.     The Forbearance Order also set aside forty percent (40%) of the "additional payments" (as that term is used in paragraph 5 of the Omni LOI) plus five percent (5%) of the Inventory Proceeds (as defined in the Forbearance Stipulation) to be deposited in a segregated account and distributed upon further order of the Court. *Id*. at ¶ 7(c).

14.    On July 24, 2014, the Court entered an order approving the disbursement of certain funds that were segregated for employee use under the Forbearance Order.  See Order Granting Motion of the Debtors for Entry of an Order Approving Disbursement of Funds Allocated to Pay Healthcare Claims ("**Disbursement Order**") [D.I. 698].  The Disbursement Order established, *inter alia*, that the 40% of the "additional payments" set aside in the Omni LOI ("**Omni Payments**") would be used to create a Remaining Employee Benefit Fund, "designated first for payment of any unpaid employee benefit claims for all employees of the Debtors, if allowed and not otherwise satisfied by the Healthcare Fund, prior to payment of any other claims, and such designation shall be binding upon any subsequent Chapter 7 trustee." *Id.* at ¶ 4.

15.    At the hearing to approve the Disbursement Order, Debtors' counsel made clear that the Remaining Employee Benefit Fund would "be dedicated to satisfying the employee benefit claims that aren't otherwise paid out of the healthcare fund." *See* Transcript of July 24, 2014 Hearing Before Honorable Mary F. Walrath, United States Bankruptcy Judge, at pg. 5 [D.I. 715].

16.    On August 21, 2014, the Debtors filed their Motion for Entry of an Order (I) Converting the Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code, (II) Releasing Kurtzman Carson Consultants, LLC as Claims and Noticing Agent for the Clerk of the Bankruptcy Court, and (III) Granting Related Relief (the "**Conversion Motion**") [D.I. 744]. In the Conversion Motion, the Debtors confirmed that the Omni Payments would "be dedicated to pay other employee benefit claims," noting that they "anticipate that the unions representing the majority of Debtors' former employees will propose and seek approval of a procedure for

distributing these future payments to satisfy remaining employee benefit claims." *Id*., at ¶ 14, Fn. 2.

17.    The Court entered an order granting the Conversion Motion and converting the Debtors' Chapter 11 cases to cases under Chapter 7 of the Bankruptcy Code on September 30, 2014 [D.I. 869].

18.    On October 1, 2014, the Office of the United States Trustee appointed Alfred T. Giuliano as the Chapter 7 Trustee in the above-captioned cases (the "**Trustee**").  *See* Notice of Appointment [D.I. 871].

19.    Subsequent to his appointment, the Trustee established February 12, 2015 as the general bar date in these Chapter 7 cases.  *See* Notice of Bar Date [D.I. 883].

20.    The Unions both timely asserted administrative expense claims on behalf of the Union Employees against Debtors' estates, and the Remaining Employee Benefit Fund in particular.  *See* IBT Admin Claims Motion [D.I. 953] and Amended ALPA Admin Claims Motion [D.I. 944].  The Unions' administrative expense claims are based upon post-Petition services rendered to the Debtors by the Union Employees that were vital to the Debtors' ability to continue operations and to maximize value for the benefit of all constituents in these cases. Thus, the Union Employees' services were "actual, necessary costs and expenses of preserving the estate" as required for administrative expense status under section 503(b)(1)(A).

21.    For example, the IBT asserted administrative expense claims on behalf of the IBT-represented employees ("**IBT Employees**"), based upon the Debtors' post-Petition violations of the IBT CBA, against the Remaining Employee Benefit, totaling an estimated $2,938,848.78, including, but not limited to:

a.    The Debtors' failure to pay the IBT Employees for accrued unused vacation time and/or personal days relating to their post-Petition employment, in the estimated amount of $257,138.58;

b.    World's failure to provide requisite notice of furlough and/or termination to the IBT and the IBT Employees, in the estimated amount of $494,943.61;

c.    World's failure to provide annual contributions to a retirement income plan on behalf of the IBT Employees based upon their post-Petition employment, in the estimated amount of $2,054,766.59; and

d.    World's failure to provide one month's worth of post-furlough medical and dental premiums for Pilots that were either furloughed or terminated post-Petition, in the estimated amount of $132,000.00.[3]

*See* IBT Admin Claims Motion [D.I. 953].[4]

22.    For further example, ALPA asserted administrative expense claims on behalf of the ALPA-represented employees ("**ALPA Employees**"), based upon the Debtors' post-Petition violations of the ALPA CBA, against the Remaining Employee Benefit, including, but not limited to:

a.    North Americans' failure to pay the ALPA Employees for accrued unused vacation time relating to their post-Petition employment, in the estimated amount of $133,171.00 (representing post-Petition ALPA grievance amounts remaining unpaid after the distribution pursuant to the Forbearance Order); and

b.    North American's failure to pay health insurance premiums, in the estimated amount of $43,451.00 (representing post-Petition ALPA grievance amounts remaining unpaid after the distribution pursuant to the Forbearance Order).[5]

---

[3]    The IBT also asserted a number of unliquidated administrative expense claims against the Debtors, and the Remaining Employee Benefit Fund in particular, for post-Petition violations of the IBT CBA.

[4]    Additionally, the IBT asserted an administrative expense claim against the Debtors, and the Remaining Employee Benefit Fund in particular, for post-Petition violations of the Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. §§ 2101 *et seq*.

[5]    ALPA also asserted administrative expense claims against the Debtors based upon North American's failure to provide pay in lieu of furlough notice and its failure to furlough pilots in seniority order, in the total estimated amount of $197,844.00 (representing post-Petition ALPA grievance amounts remaining unpaid after the distribution pursuant to the Forbearance Order). ALPA also asserted administrative expense claims, in the amount of $9,969.89, on behalf of certain pilots whose medical expenses incurred prior to March 31, 2014 were not paid in full; $1,537 on behalf of a pilot who incurred unreimbursed dental expenses after North American terminated its dental plan for pilots; and $149,786 on behalf of a pilot arising out of North American's termination of the long term disability plan for pilots.

*See* Amended ALPA Admin Claims Motion [D.I. 944].

23.     Neither the Trustee nor any other party-in-interest has filed an objection to the IBT Admin Claims Motion or the Amended ALPA Claims Motion.

24.     Upon information and belief, no other creditor has asserted a claim against the Remaining Employee Benefit Fund.

25.     According to the Trustee, there is $636,088.93 in the Remaining Employee Benefit Fund available for distribution.  In his Motion for an Order Approving Allocation of Administrative Expenses Among Debtors ("**Allocation Motion**"), the Trustee confirmed that the "remaining amount in the Remaining Employee Benefit Fund will not be used to pay any administrative expenses or any other claims until such time as any pending claims asserting rights to payment from the Remaining Employee Benefit Fund have been resolved." *See* Allocation Motion, at Fn. 2 [D.I. 1141].  *Id.*

26.     Upon information and belief, no creditors other than the IBT and ALPA have asserted claims against the Remaining Employee Benefit Fund.  The Trustee has not contacted the Unions to raise any issues regarding their administrative claims.

27.     To date, no objections have been filed to either the IBT Admin Claim Motion or the Amended ALPA Admin Claims Motion.

## JURISDICTION AND VENUE

28.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**RELIEF REQUESTED**

29.     As anticipated by the Debtors in their Conversion Motion, and in consideration of

the $654,00.00 already distributed to the ALPA Employees pursuant to the Forbearance Order, [6]

the IBT and ALPA have reached an agreement concerning the allocation and distribution of the

$636,088.93 in the Remaining Employee Benefit Fund ("**REBF Agreement**") to satisfy

remaining employee benefit claims, as follows:

   a.     A distribution to the ALPA Employees, totaling $109,703.69, in the amounts
          set forth in Exhibit A to the Proposed Order, subject to any applicable
          withholdings, in partial payment of ALPA's remaining administrative expense
          claims.

   b.     A distribution to the IBT Employees, totaling $526,385.24, as follows:

          i.     A distribution, totaling $257,138.58, in the amounts set forth in
                 Exhibit B to the Proposed Order, subject to any applicable
                 withholdings, in full payment of administrative expense claims for
                 the Debtors' failure to pay accrued unused vacation time and/or
                 personal days relating to their post-Petition employment;

          ii.    A distribution of the remainder, totaling $269,246.66, in the
                 amounts set forth in Exhibit C to the Proposed Order, subject to
                 any applicable withholdings, in partial payment of administrative
                 expense claims for World's failure to provide pay in lieu of
                 requisite notice of furlough and/or termination for IBT Employees
                 that were either furloughed or terminated post-Petition;

30.     By this Joint Motion, the Unions seek entry of an order (i) allowing administrative

expense claims filed on behalf of the IBT Employees and the ALPA Employees, as set forth in

the IBT Admin Claims Motion and the Amended ALPA Admin Claims Motion, and (ii)

directing the Trustee to immediately pay these allowed claims directly to the IBT Employees and

---

[6]   ALPA distributed the $654,000.00 that it received pursuant to the Forbearance Order in partial satisfaction of
      post-Petition grievances, as follows: $130,104.00 to pilots denied furlough pay in lieu of notice; $215,427.00 to
      pilots furloughed out of seniority order; $75,887.00 to pilots for unpaid medical insurance premiums;
      $232,582.00 to pilots for accrued but unused vacation days. *See* Amended ALPA Admin Claims Motion, at pg.
      4 [D.I. 944].

the ALPA Employees, in the amounts set forth in Exhibits A, B, and C to the Proposed Order, subject to any applicable withholdings, from the Remaining Employee Benefit Fund pursuant to the REBF Agreement.

## BASIS FOR RELIEF REQUESTED

31.     Section 503(b) of the Bankruptcy Code provides administrative expense status for the "actual, necessary costs and expenses of preserving the estate . . ." 11 U.S.C. § 503(b)(1)(A). These expenses are afforded priority under section 507(a)(1) of the Bankruptcy Code.  11 U.S.C. § 507(a)(1).

32.     The Union Employees rendered post-petition services to the Debtors that were vital to the Debtors' ability to continue operations and to maximize value for the benefit of all constituents in these cases.  Thus, the Union Employees' services were "actual, necessary costs and expenses of preserving the estate" as required for administrative expense status under section 503(b)(1)(A) of the Bankruptcy Code.

33.     Not only were the Union Employees' services necessary to the Debtors' post-Petition operations prior to the Default, but without the continuing services of the ALPA pilots the Omni LOI would not have been possible and the Forbearance Stipulation and Forbearance Order would never have materialized – to the overwhelming detriment of all administrative creditors.

34.     In addition to funding the Remaining Employee Benefit Fund, the Forbearance Stipulation and Forbearance Order benefited administrative creditors by carving out:

    a.     $2,770,000.00 in direct payments from Omni to fund the Debtors' continuing operations and an orderly wind-down process;

    b.     47.5% of Debtors' collections on post-Default Receipts to fund the wind-down process;

c.      2% of Debtors' collections on post-Default Receipts plus 2% of the Inventory Proceeds to fund an employee incentive plan; and

d.      Payments to major administrative creditors such as Pratt & Whitney Engine Leasing LLC, World (DE) QRS 16-95, Inc., GE Capital Aviation Services LLC and GE Capital Aviation Services Limited.

*See* Forbearance Stipulation, at ¶¶ 1-3 [D.I. 465-2]; Forbearance Order [D.I. 519].

35.      The Remaining Employee Benefit Fund was established solely for the payment of employee claims.  To date, upon information and belief, the Unions are the only creditors that have asserted claims against the Remaining Employee Benefit Fund.  Four years have passed since the Unions filed claims asserting the sole right of employees to recoveries from the Remaining Employee Benefit Fund, and at no time has the Trustee, or any other party-in-interest, filed an objection disputing the Union Employees' right to recovery from the Remaining Employee Benefit Fund.  As such, the Unions' Joint Motion to approve the allowance and immediate payment of certain administrative expense claims from the Remaining Employee Benefit Fund, pursuant to the REBF Agreement should be granted.

## NOTICE OF MOTION

36.      Notice of this Motion has been given to: (i) counsel to the Trustee; (ii) the Office of the United States Trustee for the District of Delaware; and (iii) any party requesting notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Unions submit that no other or further notice is necessary.

## CONCLUSION

**WHEREFORE,** the Unions respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (i) granting the Unions' request for allowed administrative expense claims filed on behalf of the IBT Employees and the ALPA Employees, as set forth in the IBT Admin Claims Motion and the Amended ALPA Admin

Claims Motion, and, (ii) directing the Trustee to immediately pay the allowed claims directly to the IBT Employees and the ALPA Employees, in the amounts set forth in Exhibits A, B, and C to the Proposed Order, subject to any applicable withholdings, from the Remaining Employee Benefit Fund pursuant to the REBF Agreement, and (iii) such other and further relief as the Court deems just and proper.

Dated: November 12, 2019

CHIPMAN BROWN CICERO & COLE, LLP

_/s/ Mark D. Olivere_

Mark D. Olivere (No. 4291)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:     (302) 295-0191
Facsimile:     (302) 295-0199
Email:          olivere@chipmanbrown.com

—and—

LEVY RATNER, P.C.
Ryan J. Barbur (*Admitted Pro Hac Vice*)
80 Eighth Avenue, 8th Floor
New York, New York 10011
Telephone:     (212) 627-8100
Facsimile:     (212) 627-8182 (fax)
Email:          rbarbur@levyratner.com

*Counsel to the IBT*

LAW OFFICE OF SUSAN E. KAUFMAN, LLC

_/s/ Susan E. Kaufman_

Susan E. Kaufman (No. 3381)
919 North Market Street, Suite 460
Wilmington, Delaware 19801
Telephone:     (302) 472-7420
Facsimile:     (302) 792-7420
Email:          skaufman@skaufmanlaw.com

—and—

**COHEN WEISS AND SIMON LLP**
Peter D. DeChiara
330 West 42nd Street
New York, New York 10036-6976
Telephone:     (212) 356-0216
Facsimile:     (646) 473-8216
Email:         pdechiara@cwsny.com

*Counsel to ALPA*