# Exhibit 1

## Agreement

## **SALE AND PURCHASE AGREEMENT**

This SALE AND PURCHASE AGREEMENT (this "Agreement") is made on this 5th day of January, 2021, by and between Alfred T. Giuliano, solely in his capacity as the Chapter 7 trustee appointed in the bankruptcy cases of Global Aviation Holdings, Inc., *et al.* (the "Debtors"), pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), jointly administered under Case No. 13-12945 (MFW) (the "Bankruptcy Case") (in such capacity, Mr. Giuliano is referred to herein as the "Seller" or "Trustee"), and Investment Recovery Group, LLC, or its assignee or designee that is owned or controlled by the same person(s) as Investment Recovery Group, LLC (the "Buyer"). The Seller and the Buyer are also referred to herein individually as a "Party" and collectively as the "Parties."

WHEREAS, the Debtor Global Aviation Holdings, Inc. owns, directly or indirectly, 100% of the issued and outstanding stock of the following entities: Global Shared Services, Inc., New ATA Acquisition, Inc., New ATA Investment, Inc., North American Airlines, Inc., World Air Holdings, Inc. and World Airways, Inc. (collectively, the "Acquired Corporations"); and

WHEREAS, the Seller has agreed to sell and the Buyer has agreed to buy 100% of the Seller's right, title and interest in and to the issued and outstanding stock of the Acquired Corporations (all of such right, title and interest is collectively referred to herein as the "Stock"); and

WHEREAS, the Seller has agreed to sell and the Buyer has agreed to buy all of Seller's right, title and interest in and to the Tax Assets (as defined in paragraph 3 below) of the Debtors; and

WHEREAS, the Parties desire to set forth the terms and conditions governing the purchase and sale of the Stock of the Acquired Corporations and Seller's right, title and interest in and to the Tax Assets (as defined in paragraph 3 below) as set forth herein, subject to approval by the Bankruptcy Court.

NOW, THEREFORE, for and in consideration of the premises, the mutual agreements and covenants herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1. <u>Agreement to Sell and Purchase the Stock and Remaining Assets</u>. In consideration of the representations and warranties of the Seller and the Buyer set forth in this Agreement, the Seller hereby agrees to irrevocably sell, transfer and convey all right, title and interest of Seller in the Stock of the Acquired Corporations and the Tax Assets (as defined in paragraph 3 below) to the Buyer free and clear of all liens, claims and encumbrances to the extent provided in the Order (as defined in paragraph 2 below), and the Buyer hereby agrees to pay Seller at the Closing (as defined in paragraph 4 below) the sum of $100,000.00 (the "Closing Payment"). For the avoidance of doubt, except as to the Stock of the Acquired Corporations and the Tax Assets, nothing in this Agreement

shall be interpreted to be a sale of any other assets of the Debtors, including, but not limited to, any cash held by the Trustee in bank accounts or any other assets that are owned by the Debtors.

2. <u>Bankruptcy Court Approval</u>. The Bankruptcy Court order approving of this Agreement and the proposed transactions contemplated by this Agreement shall be in form and content reasonably satisfactory to the Parties (the "Order") and shall, without limitation, include findings that (i) the sale of the Stock of the Acquired Corporations and the Tax Assets (as defined in paragraph 3 below) of the Debtors to the Buyer will be free and clear of all liens, claims and encumbrances to the fullest extent permitted pursuant to sections 363 (b) and (f) of the Bankruptcy Code, (ii) the Buyer is a good-faith purchaser within the meaning of section 363 (m) of the Bankruptcy Code, and (iii) the Closing Payment constitutes good and fair consideration. Each Parties' obligation to close the transaction contemplated herein shall be subject to the Order being in form and content reasonably satisfactory to such Party having been entered by the Bankruptcy Court and being unstayed and in full force and effect as of the Closing.

3. <u>Tax Assets</u>. "Tax Assets" as used herein shall constitute any and all tax refunds, tax rebates, overpayments, tax attributes or any other payment that is due, may be due or will become due to or with respect to the Debtors and the Acquired Corporations from the Internal Revenue Service ("IRS") or any other federal, state and local taxing authorities of the United States of America.

4. <u>Closing and Closing Deliverables</u>.

(a) The closing of the purchase and sale of the Stock of the Acquired Corporations and the Tax Assets of the Debtors under this Agreement shall occur no later than three (3) business days after the entry of the Order of the Bankruptcy Court approving of this Agreement (the "Closing").

(b) At the Closing, the Buyer will pay in good funds the Closing Payment to Seller, and Seller will deliver to Buyer a Bill of Sale in the form attached hereto as Exhibit A.

(c) At the Closing, the Seller will deliver an original executed IRS form, a copy of which is attached hereto as Exhibit B, to designate New ATA Investment, Inc. as the "designated agent" provided under Rev. Proc. 2015-26 with respect to the Global Aviation Holdings, Inc. consolidated group for tax consolidated return filings 2020 and prior years.

5. <u>Representations and Warranties of Seller</u>. The Seller represents and warrants to the Buyer as follows:

(a) The Seller is the duly appointed Chapter 7 trustee for the Debtors and, subject to entry of the Order, the Seller has the requisite power and authority to execute and deliver this Agreement and to perform his obligations under this Agreement.

(b) No person has any right or other claim against Seller based upon any action of Seller for any commission, fee or other compensation as a finder or broker in connection with the transactions contemplated by this Agreement.

(c) To Seller's Knowledge (i.e., to Alfred Giuliano's actual current knowledge, without inquiry), (i) the Seller, in his capacity as the Trustee of the Debtors, owns and controls 100% of the issued and outstanding stock of the Acquired Corporations and the Tax Assets, (ii) the stock of the Acquired Corporations and the Seller's right, title and interest in and to the Tax Assets of the Debtors are not subject to any liabilities or debt of any nature (other than such liabilities and debt, if any, as to which the Stock and Tax Assets are being sold free and clear pursuant to the Order).

(d) Regarding the Acquired Corporations, the Seller will not hereafter (i) make, change or revoke any tax election, (ii) change any annual tax accounting period, (iii) enter into any agreement with respect to taxes or apply for any tax ruling, (iv) file any amended tax return, (v) settle or compromise any tax liability or claim for a tax refund, (vi) surrender any right to claim a refund for taxes, (vii) incur any material tax liability outside of the ordinary course of business, (viii) consent to an extension of the statute of limitations applicable to any tax claim or assessment (other than pursuant to the extensions of time to file tax returns obtained in the ordinary course of business) or (ix) change (or request any governmental unit (as defined in section 101(27) of the Bankruptcy Code) to change any aspect of its method of accounting for tax purposes, unless agreed to by Buyer in Buyer's sole discretion.

(e) To the Seller's Knowledge, the execution, delivery and performance by Seller of this Agreement and the transactions contemplated hereby do not and will not conflict with or result in a conflict with any other (i) agreement or (ii) order previously entered by the Bankruptcy Court in the Debtors' bankruptcy cases.

(f) To the Seller's Knowledge, no order, consent, approval, waiver or authorization of any other party, entity or governmental entity, except entry of the Order, is required in connection with the execution, delivery and performance by Seller of this Agreement and the other documents and instruments to be executed and delivered by Seller pursuant hereto and the transactions contemplated hereby.

6. "AS IS" TRANSACTION. BUYER HEREBY ACKNOWLEDGES AND AGREES THAT, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS AGREEMENT, SELLER, ON BEHALF OF THE DEBTORS' BANKRUPTCY ESTATES, MAKES NO REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER RELATING TO THE STOCK OR THE TAX ASSETS, INCLUDING THE VALUE OF SUCH STOCK OR THE TAX ASSETS, OR ANY OTHER MATTER OR THING RELATING THERETO OR ANY PORTION THEREOF. BUYER FURTHER ACKNOWLEDGES THAT BUYER HAS CONDUCTED ITS OWN INVESTIGATION OF THE STOCK AND THE TAX ASSETS AS BUYER DEEMED NECESSARY OR APPROPRIATE AND THAT IN PROCEEDING WITH ITS ACQUISITION

OF THE STOCK OF THE ACQUIRED CORPORATIONS AND THE TAX ASSETS, BUYER IS DOING SO BASED SOLELY UPON SUCH INDEPENDENT INSPECTIONS AND INVESTIGATIONS. ACCORDINGLY, BUYER WILL ACCEPT THE STOCK OF THE ACQUIRED CORPORATIONS AND THE TAX ASSETS AT THE CLOSING "AS IS," "WHERE IS," AND "WITH ALL FAULTS."  WITHOUT LIMITING ANY OF THE FOREGOING, SELLER HEREBY EXPRESSLY DISCLAIMS ANY IMPLIED REPRESENTATIONS OF ANY KIND OR CHARACTER AS TO THE STOCK AND/OR THE TAX ASSETS.

7. <u>Representations and Warranties of Buyer</u>.  The Buyer represents and warrants to the Seller as follows:

(a) No person has any right or other claim against the Buyer for any commission, fee or other compensation as a finder or broker in connection with the transaction contemplated by this Agreement.

(b) The Buyer is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization.  The Buyer has the requisite corporate power and authority to execute and deliver this Agreement and to perform its obligations under this Agreement.

(c) No person has any right or other claim based upon any action of Buyer to any commission, fee or other compensation as a finder or broker in connection with the transactions contemplated by this Agreement.

(d) The execution, delivery and performance by Buyer of this Agreement and the transactions contemplated hereby do not and will not conflict with or result in a conflict with any other agreement or obligation of Buyer.

(e) No order, consent, approval, waiver or authorization of any other party, entity or governmental entity is required in connection with the execution, delivery and performance by Buyer of this Agreement and the other documents and instruments to be executed and delivered by Buyer pursuant hereto and the transactions contemplated hereby.

8. <u>No Survival</u>.  All representations and warranties of Seller and Buyer set forth in paragraphs 5 and 7 above, respectively, shall lapse and cease to be of any further force or effect whatsoever upon the Closing.

9. <u>Documents and Cooperation</u>.  Seller agrees to provide Buyer with all documents in the Seller's reasonable control and/or in Seller's possession requested by Buyer to the extent relating exclusively to or representing or comprising the Stock or the Tax Assets, including but not limited to, the Debtors' and the Acquired Corporations' books, records, tax returns, schedules, tax notes and related accounting information related to the Tax Assets.  If any such documents or information are in the possession of a third party, the Seller will, until the Bankruptcy Case is closed, cooperate in a commercially reasonable manner with Buyer (and without requiring Seller to join in or initiate any action or proceeding of any kind) to assist Buyer in obtaining those

documents and/or information including, but not limited to, directing and/or requesting that third parties assist Buyer and provide the requested information and/or documents to Buyer; provided that Seller shall not be required to incur any out-of-pocket fees or expenses to comply with such requests.  Nothing in this Agreement shall be interpreted to prevent the Trustee from filing the "Trustee's Final Report" in the Debtors' chapter 7 cases required to fulfill the Trustee's statutory duties under the Bankruptcy Code and for the administration of the Debtors' estates, and nothing in this Agreement shall prevent the Trustee from performing any other procedural task that requires the Trustee's authority as the owner of the stock in the Debtors or sole representative of the Debtors' estates; provided that such Trustee authority shall not impair the obligations or rights that the Buyer is entitled to as purchaser of the Stock of the Acquired Corporations and the Tax Assets.

      10.    <u>Notices</u>.  Whenever any notice is required or authorized to be given under this Agreement, such notice shall be given in writing and sent by regular and/or certified mail, postage prepaid, return receipt requested, with a copy by email.  Any such notice, if sent to Seller by Buyer, shall be addressed as follows, or to any other address provided by Buyer to Seller:

> Investment Recovery Group, LLC
> Attention:  Daniel W. Grotenhuis, Manager
> 16192 Coastal Highway
> Lewes, Delaware 19958
> Email:  dgrotenhuis@investment-recovery.com

If sent by Buyer to Seller, any such notice shall be addressed as follows, or to any other address provided by Seller to Buyer:

> Alfred T. Giuliano, Chapter 7 Trustee
> c/o Pachulski, Stang, Ziehl & Jones LLP
> Attention: Peter J. Keane, Esq.
> 919 N. Market Street, 17th floor
> Wilmington, Delaware 19801
> Email:  pkeane@pszjlaw.com

      11.    <u>Successors</u>.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and Buyer's permitted assigns.

      12.    <u>Sole Agreement</u>.  This Agreement and the Bill of Sale shall constitute the entire agreement between the Parties and shall supersede all prior agreements and understandings (written or oral) between the Parties respecting the subject matter hereof.  This Agreement can only be modified by a written document signed by the Parties.

      13.    <u>Severability</u>.  If any provision of this Agreement is determined to be invalid by a court of competent jurisdiction under applicable law, such invalidity shall not affect any other provisions of this Agreement that can be given effect without the invalid provision and, to this end, the provisions hereof are severable.

14. <u>Jurisdiction and Venue</u>.  The Parties submit and consent to the exclusive jurisdiction (both personal and subject matter) of the Bankruptcy Court adjudicate any dispute or claim arising under, in connection with or related to this Agreement.  In the event the Bankruptcy Court determines not to or declines to exercise jurisdiction over any such dispute, then the Parties submit and consent to the jurisdiction (both personal and subject matter) of the federal or state court Courts located in Wilmington, Delaware to adjudicate any dispute or claim arising under, in connection with or related to this Agreement; provided that if the Debtors Bankruptcy Cases are closed and the Trustee is discharged, the Trustee has no obligation to appear and defend the estate in any action outside of the Bankruptcy Court.

15. <u>Waiver of Right to Jury Trial</u>.  THE PARTIES EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY DISPUTE OR CLAIM ARISING UNDER, IN CONNECTION WITH OR RELATED TO THIS AGREEMENT.

16. <u>Authorization</u>.  Each Party signing this Agreement hereby covenants and warrants that they are fully authorized to sign the Agreement on behalf of the Party they represent and is fully authorized to bind the Party to all of the terms of this Agreement; provided, however, as Seller and Buyer hereby acknowledges and agrees that such assurance is subject to and dependent upon entry of the Order.  The Parties to this Agreement acknowledge that they have read all of the terms of this Agreement, that they have consulted with the counsel of their choice regarding the terms of this Agreement, and enter into this Agreement voluntarily and without duress.

17. <u>Jointly Drafted</u>.  The Parties to this Agreement acknowledge and stipulate that it has been drafted through a joint effort of the Parties and, therefore, shall not be construed in favor of or against any of the Parties.  The terms of this Agreement shall be deemed to have been jointly negotiated and drafted by the Parties.

18. <u>Governing Law</u>.  This Agreement shall be governed by and construed and interpreted in accordance with the laws of the State of Delaware without giving effect to conflict of law or choice of law provisions thereof, except to the extent that the law of the United States, including the Bankruptcy Code, governs any matters set forth herein, in which case such federal law shall govern.

19. <u>Execution</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and all of which, taken together, shall constitute one Agreement binding upon the Parties.  Executed facsimiles and/or .pdf copies shall be deemed and considered originals.

20. <u>No Recourse to Trustee</u>.  Buyer expressly acknowledges and agrees that the Trustee is executing this Agreement and entering into the transaction contemplated herein solely in his capacity as Chapter 7 Trustee for bankruptcy estates of the Debtors (collectively, the "Estates") and that in the event of any default in the performance of the obligations of Trustee or the Debtors' respective Estates' under this Agreement (or any document executed pursuant hereto) or the transaction contemplated herein or in the event that any other claim is asserted against any Debtor or its respective Estate in

connection with this Agreement or the transactions contemplated herein, the Trustee shall in no event have any personal liability whatsoever (whether in his individual capacity or otherwise), it being expressly understood and agreed that Buyer's sole and exclusive recourse, if any, in such event shall be to the assets of the Estates, except for actual fraud.

21. <u>Specific Performance</u>.  Notwithstanding anything to the contrary in this Agreement, Buyer and Seller each acknowledges and agrees that the other would be damaged irreparably in the event any of the provisions of this Agreement are not performed in accordance with their terms in any material respect or otherwise are breached in any material respect; it is and will continue to be difficult to ascertain the nature, scope and extent of such harm; and a remedy at law for such failure or breach will be inadequate.  Accordingly, each of the Parties agrees that the other shall be entitled to seek specific enforcement and/or an injunction (including a temporary restraining order, preliminary injunction and/or or permanent injunctive relief) to prevent material breaches of the provisions of this Agreement and to enforce specifically this Agreement in any action instituted in any court of the United States or any state having jurisdiction over the Parties and the matter in addition to any other remedy to which it may be entitled, at law or in equity.

[Remainder of Page Intentionally Left Blank]

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement as of the date written above.

| BUYER: | SELLER: |
|---|---|
| INVESTMENT RECOVERY GROUP, LLC | GLOBAL AVIATION HOLDINGS, INC. AND THE ACQUIRED CORPORATIONS |
| By: _/s/ Daniel W. Grotenhuis_<br>Daniel W. Grotenhuis<br>Manager | By: _____<br>Alfred T. Giuliano<br>Chapter 7 Trustee for the estates of Global Aviation Holdings, Inc., *et al.*, solely in his capacity as Trustee and not in any individual capacity |

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date written above.

**BUYER:**

INVESTMENT RECOVERY GROUP, LLC

By:_____
   Daniel W. Grotenhuis
   Manager

**SELLER:**

GLOBAL AVIATION HOLDINGS, INC. AND THE ACQUIRED CORPORATIONS

By: *(signed)*
   Alfred T. Giuliano
   Chapter 7 Trustee for the estates of Global Aviation Holdings, Inc., *et al.*, solely in his capacity as Trustee and not in any individual capacity

# EXHIBIT A

## **BILL OF SALE**

For good and valuable consideration received from Investment Recovery Group, LLC, or its assignee or designee that is owned or controlled by the same person(s) as Investment Recovery Group, LLC ("IRG")(the "Buyer"), the receipt and sufficiency of which is hereby acknowledged by Alfred T. Giuliano, solely in his capacity as Chapter 7 trustee appointed in the bankruptcy case of Global Aviation Holdings, Inc., *et al.* ( the "Debtors"), pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), jointly administered under Case No. 13-12945 (MFW)(the "Bankruptcy Case")(the "Trustee" or "Seller," and with the Buyer, collectively the "Parties," and individually, a "Party"),

WHEREAS, the Seller and the Buyer have entered into a Sale and Purchase Agreement dated as of January 5, 2021 (the "Agreement")(unless otherwise defined herein, capitalized terms used herein shall have the definition set forth in the Agreement); and

WHEREAS, pursuant to the Agreement and the Order of the Bankruptcy Court approving of the Agreement, the Seller has agreed to sell, transfer, assign, convey and deliver the all his of right, title and interest in and to the issued and outstanding Stock of the Acquired Corporations and any Tax Assets of the Debtors to Buyer;

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth in the Agreement and the Order of the Bankruptcy Court, the Seller does hereby agree as follows:

1. **Sale and Assignment of the Purchased Assets.**

The Seller hereby sells, transfers, assigns, conveys and delivers unto the Buyer all of his of right, title and interest in and to the issued and outstanding Stock of the Acquired Corporations and any Tax Assets of the Debtors.

2. **Further Assurances.**

Subject to the provisions of this Bill of Sale and the Agreement, the Seller hereby agrees to execute, acknowledge, deliver, file and record such further certificates, amendments, instruments and documents, and to do all such other acts and things, as may be reasonably requested by the Buyer in order to carry out the intent and purpose of the Bill of Sale and Agreement at the expense of the requesting Party, provided that in each case (i) this provision shall not require any Party to take any action that is commercially unreasonable or that would result in any liability of or material cost to such Party, and (ii) as to the Trustee, the obligation set forth in this section 2 shall terminate and cease to be of any further force or effect upon the closing of the Bankruptcy Case.

3. **No Third Party Beneficiaries.**

Nothing in this Bill of Sale is intended to, or shall, confer any third party beneficiary or other rights or remedies upon any person or entity other than the Parties hereto.

4. **Severability.**

Any provision of this Bill of Sale which is determined by a court of competent jurisdiction to be invalid or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining provisions of this Bill of Sale or affecting the validity or enforceability of any of the provisions of this Bill of Sale in any other jurisdiction, and if any provision of this Bill of Sale is determined to be so broad as to be unenforceable, such provision shall be interpreted to be only so broad as is enforceable, provided in all cases that neither the economic nor legal substance of this Bill of Sale is affected by the operation of this sentence in any manner materially adverse to any party. Upon any such determination that any provision of this Bill of Sale is invalid or unenforceable, the Parties shall negotiate in good faith in an effort to agree upon a suitable and equitable substitute provision to effect the original intent of the Parties.

5. **Amendment, Waiver and Termination.**

This Bill of Sale may not be amended or terminated, and no provision hereof may be waived, except by a writing signed by each of the Parties hereto.

6. **Governing Law.**

This Bill of Sale shall be governed and construed and interpreted in accordance with the laws of the State of Delaware without giving effect to conflict of law or choice of law provisions thereof, except to the extent that the law of the United States, including the Bankruptcy Code, governs any matters set forth herein, in which case such federal law shall govern.

7. **Jurisdiction and Venue.**

The Parties submit and consent to the jurisdiction (both personal and subject matter) of the Bankruptcy Court adjudicate any dispute or claim arising under, in connection with or related to this Bill of Sale.  In the event the Bankruptcy Court determines not to or declines to exercise jurisdiction over any such dispute, then the Parties agree to submit and consent to the jurisdiction (both personal and subject matter) of the federal or state court Courts located in Wilmington, Delaware to adjudicate any dispute or claim arising under, in connection with or related to this Bill of Sale; provided that if the Debtors' Bankruptcy Case is closed and the Trustee is discharged, the Trustee has no obligation to appear and defend the estate in any action outside of the Bankruptcy Court.  THE PARTIES EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATED TO THIS BILL OF SALE.

8. **Subject to Agreement and Order.**

In the event of any conflict or other difference between the Agreement and this Bill of Sale, the provisions of the Agreement shall govern and control. In the event of any conflict or other difference between the Agreements, the Order of the Bankruptcy Court approving of the Agreement (the "Sale Order"), and this Bill of Sale, the provisions of the Sale Order shall govern

-3-

and control.  For the avoidance of all doubt and without limiting the foregoing, (i) this Bill of Sale is expressly subject to the limitations and disclaimers set forth in Section 6 of the Agreement, and (ii) nothing herein shall be deemed to expand or otherwise impose on the Trustee any obligations beyond or greater than than those imposed on the Trustee by the Agreement and/or the Sale Order.

IN WITNESS WHEREOF, the Seller has caused this Bill of Sale to be executed on January ___, 2021.

**GLOBAL AVIATION HOLDINGS, INC. AND ITS SUBSIDIARIES**

By: _____
     Alfred T. Giuliano
     Chapter 7 Trustee for the estates of Global Aviation Holdings, Inc., *et al.*, solely in his capacity as Trustee and not in any individual capacity

# EXHIBIT B

**EXHIBIT B**

REV. PROC. 2015-26: TERMINATING AGENT'S DESIGNATION OF AGENT UNDER SECTION 1.1502-77(c)(5)

TERMINATING AGENT:
Global Aviation Holdings, Inc.
c/o Alfred T. Giuliano
Giuliano, Miller & Co., LLC
2301 E. Evesham Road
Pavilion 800, Suite 210
Voorhees, NJ 08043
EIN: 20-4222196

DESIGNATED AGENT:
New ATA Investment, Inc.
c/o Alfred T. Giuliano
Giuliano, Miller & Co., LLC
2301 E. Evesham Road
Pavilion 800, Suite 210
Voorhees, NJ 08043
EIN: 20-4222109
CONSOLIDATED RETURN YEAR(S) OF DESIGNATION: 2020 AND PRIOR YEARS

INTERNAL REVENUE SERVICE CENTER WHERE RETURN FILED:

Department of Treasury
Internal Revenue Service Center
Cincinnati, OH 45999-0012

EXPECTED DATE OF TERMINATION OF THE DESIGNATING AGENT:
Closing Date: _____, 2021

The designated agent, New ATA Investment, Inc., agrees to serve as the agent for the Global Aviation Holdings, Inc. consolidated group pursuant to the terminating agent's designation.

Under penalties of perjury, I declare that I am authorized to make this designation on behalf of the terminating agent and that, to the best of my knowledge, the information provided is true, correct, and complete.

_____

TERMINATING AGENT

-2-

Under penalties of perjury, I declare that I am authorized to sign this statement on behalf of the designated agent and that, to the best of my knowledge, the information provided is true, correct, and complete.

_____

DESIGNATED AGENT