## EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>GLOBAL AVIATION HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 13-12945 (MFW)<br><br>Jointly Administered |

### STIPULATION RESOLVING OBJECTION TO PROOFS OF CLAIM FILED BY NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA AND CERTAIN OF ITS AFFILIATES

Global Aviation Holdings, Inc. (the "Debtors"), Cerberus Business Finance, LLC ("Cerberus"), National Union Fire Insurance Company of Pittsburgh, PA, AIG Assurance Company, AIG Specialty Insurance Company, American Home Assurance Company, Commerce and Industry Insurance Company, Illinois National Insurance Company, The Insurance Company of the State of Pennsylvania, Lexington Insurance Company, New Hampshire Insurance Company, Southern Risk Specialists, and certain other entities related to AIG Property Casualty, Inc. (collectively, "AIG," and together with the Debtors, the "Parties"), hereby stipulate and agree (the "Stipulation") to (i) the satisfaction of the AIG Claims (as defined herein) which were filed in the Debtors' bankruptcy cases, and (ii) the resolution of the Claim Objection (as defined herein), subject to and conditioned upon the terms and conditions of this Stipulation.

### RECITALS

**WHEREAS**, commencing November 1, 1989 and ending 12:01 a.m., February 13, 2019, AIG provided the Debtors with certain insurance coverages, which included certain workers'

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Global Aviation Holdings, Inc. (2196); Global Shared Services Inc. (1692); New ATA Acquisition Inc. (1985); New ATA Investment Inc. (2109); North American Airlines, Inc. (8792); World Air Holdings, Inc. (I 036); and World Airways, Inc. (8276). The Debtors' former corporate address was 101 World Drive, Peachtree City, Georgia 30269.

183903.2

compensation, employers' liability, aircraft, directors and officers, errors and omissions policies (the "Policies") and, in connection with such coverage, AIG and the Debtors entered into certain corresponding payment agreements, addenda, schedules and related documents (together with the Policies, the "Insurance Program"). A list of the Policies is annexed to the AIG Claims (as defined herein);

WHEREAS, under the Insurance Program, the Debtors are obligated to, among other things, pay and reimburse AIG certain amounts, including but not limited to premiums, deductibles, self-insured retention, reimbursement obligations, fees, expenses and related costs (the "Payment Obligations");

WHEREAS, the Insurance Program is secured by certain security delivered by the Debtors and/or its affiliates to AIG (the "Cash Collateral") and, for the avoidance of doubt, as used herein the term "Cash Collateral" includes all collateral or security of any kind provided by the Debtors or any predecessor, or present or former affiliate, whether held in trust, in escrow, or by AIG, for the purpose of securing the Payment Obligations under the Insurance Program;

WHEREAS, AIG currently holds approximately $326,455 in Cash Collateral;

WHEREAS, on November 12, 2013 (the "Petition Date"), the Debtors each filed a voluntary petition for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court") commencing the above-captioned cases (the "Chapter 11 Cases");

WHEREAS, on September 30, 2014, the Bankruptcy Court entered an order converting the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code (the "Chapter 7 Cases");

WHEREAS, on October 1, 2014, Alfred T. Giuliano was appointed Trustee;

WHEREAS, on September 19, 2014, the Bankruptcy Court entered an Order Approving Stipulation for Collection of Collateral Between Cerberus Business Finance, LLC and the Debtors (the "Collection Stipulation"), which provided that "the Debtors do hereby consent, empower and grant to Cerberus and/or its designee, and unto its successors and assigns, all right, power and interest to enforce, collect, receive and apply to the DIP Obligations, the Assets" subject to "any Permitted Liens of Wells Fargo Bank, N.A.";

WHEREAS, Cerberus represents that the "Assets," as defined in the Collection Stipulation, include the Cash Collateral provided to AIG;

WHEREAS, AIG timely filed the proofs of claim numbers 515, 519, 520, 523, 524, 526 and 527 (collectively, the "AIG Proofs of Claim");

WHEREAS, on February 1, 2022, the Trustee filed the Fourth Omnibus Objection (Substantive) of Alfred T. Giuliano, Chapter 7 Trustee, to Certain Claims (Reduced/Reclassify) (the "Claim Objection"), seeking to reduce/reclassify/modify the AIG Claims;

WHEREAS, Cerberus represents and warrants that Wells Fargo N.A. has no liens of any kind against the Cash Collateral;

WHEREAS, the Parties have agreed, subject to Bankruptcy Court approval, to fully resolve the issues regarding, among other things, the Insurance Program, the Cash Collateral, the AIG Claims and the Claim Objection on the terms set forth herein.

NOW, THEREFORE, in consideration of the mutual promises contained herein, the Parties, intending to be legally bound, stipulate and agree as follows:

1. The recitals set forth above are incorporated herein by this reference as though set forth herein at length.

2. This Stipulation shall be effective upon the date the order approving this Stipulation becomes a final, non-appealable order that is not subject to an appeal (the "Stipulation Effective Date").

3. In consideration of the mutual releases and other provisions herein, AIG shall pay $125,000 (the "Settlement Payment") to Cerberus from the Cash Collateral by wire transfer no later than seven (7) days after the Stipulation Effective Date. Timely remittance of the Settlement Payment is contingent on AIG's verification of the wire transfer information provided by Cerberus.

4. Except for the Settlement Payment, AIG may retain as its own, free and clear of all claims from any other person or entity, all remaining Cash Collateral, premium, payments and other amounts previously provided to it on account of the Insurance Program, including all funds provided as security for the Insurance Program or any other funds related to the Insurance Program.

5. The Trustee and Cerberus further agree that all subrogation, reimbursement, indemnity, or recovery rights held by the Debtors and, if applicable, Cerberus, in respect of the Policies and any payments related thereto the Debtors and, if applicable, Cerberus are owed now or may be owed and payable in the future are assigned to AIG without any further action required by the Trustee, the Debtors, the Debtors' estates and/or, if applicable, Cerberus.

6. For the avoidance of doubt, and to the extent applicable, the automatic stay provided under 11 U.S.C. § 362 and/or any discharge or other injunction, shall be modified, annulled and/or terminated to the extent necessary to allow AIG to retain and apply, in its sole discretion, the Cash Collateral.

7.  Upon (a) the occurrence of the Stipulation Effective Date and (b) receipt by Cerberus of the Settlement Payment in good funds, (i) the AIG Claims shall be deemed satisfied in full in accordance with the terms of this Stipulation, and (ii) the Claim Objection shall be deemed fully resolved.

8.  Upon the Stipulation Effective Date and subject to the last sentence of this paragraph 8, the Trustee, the Debtors, the Debtors' estates, Cerberus and AIG hereby release any and all claims, demands, causes of action, liabilities, obligations, damages, losses, costs and expenses, whether known or unknown, of every kind or nature whatsoever, which they had or claim to have or may have against each other in connection with the Insurance Program, the Payment Obligations, the Cash Collateral, the AIG Claims and/or the Claims Objection. Notwithstanding anything to the contrary contained in this Stipulation, the mutual releases under this Stipulation shall be effective only upon receipt by Cerberus of the Settlement Payment in good funds.

9.  For the avoidance of doubt, the foregoing release shall not limit nor be deemed to limit the rights of AIG or Cerberus to enforce this Stipulation in accordance with its terms. Further, nothing contained in this Stipulation shall be deemed to in any way impair, impact, or otherwise affect AIG's rights and defenses under the applicable insurance policies or otherwise in connection with the Insurance Program including, without limitation, all rights and defenses to any claim for coverage thereunder.

10. Only the Trustee, the Debtors, the Debtors' estates, Cerberus and AIG are beneficiaries of this Stipulation. This Stipulation is not intended to benefit any other person or entity.

11. Nothing herein shall release, reduce, enlarge, or alter in any way any insurance coverage previously provided under the Insurance Program, except that the obligations of the Debtors to pay the Payment Obligations are forever discharged and released, as set forth in paragraph 8 of this Stipulation. Except for the Payment Obligations, all conditions, terms, provisions and exclusions of any kind under the insurance policies that are part of the Insurance Program or other governing agreements remain in full force and effect, including without limitation, those relating to dates of coverage, the provision of coverage and exclusions, erosion, exhaustion, limitations, and the duty of cooperation; provided that, except as otherwise expressly set forth in this Stipulation, the Trustee, Debtors and the Debtors' estates shall have no further monetary obligations arising under or relating to the Insurance Program.

12. The Clerk of the Court and the Claims and Noticing Agent are hereby authorized to reflect the Stipulation on the docket and claims register for the above-referenced case.

13. This Stipulation may be executed in counterparts, each of which shall be deemed an original and evidence of this Stipulation may be exchanged by fax or by electronic transmission of a scanned copy of the signature pages or by exchange of originally signed documents.

14. This Stipulation shall be binding upon all successors and assigns of all of the Parties hereto and their respective successors, assignees, agents, attorneys and representatives.

15. The Parties acknowledge that they have had the benefit of counsel of their choice and have been afforded an opportunity to review this Stipulation with their chosen counsel.

16. This Stipulation may not be modified, amended or supplemented in any respect, nor may any of its provisions be waived, except by a subsequent writing signed by the Parties or their successors-in-interest.

17. The waiver of any breach of this Stipulation shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

18. This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, might have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties, and each of them have contributed substantially and materially to the preparation of this Stipulation.

19. Each person who executes this Stipulation represents and warrants that (i) they are duly authorized and has requisite authority to enter into, execute and deliver this Stipulation on behalf of such Party and to bind his or her respective Party to the terms and conditions of this Stipulation; and, (ii) they have entered into this Stipulation freely and voluntarily, without any coercion or duress, and with a full understanding of the obligations and implications of this Stipulation.

20. The Trustee represents and warrants that Cerberus is the sole entity entitled to the Cash Collateral and no other party in interest has any claim to or right, title or interest in the Cash Collateral.

21. All representations, warranties, inducements, and/or statements of intention made by the Parties that relate to this Stipulation are embodied in the Stipulation, and none of the Parties relied upon, will be bound by or will be liable for any alleged representation, warranty, inducement or statement of intention that is not expressly set forth in this Stipulation.

22. This Stipulation shall be governed by and interpreted in accordance with the Bankruptcy Code and internal laws of the State of Delaware, without regard to conflicts of laws principles.

23.  Except as expressly set forth in this Stipulation, no provision of this Stipulation is intended to confer any rights, benefits, remedies, obligations, or liabilities hereunder upon any person other than the Parties hereto and their respective successors and assigns.

24.  This Stipulation constitutes the entire agreement between the Parties with respect to the matters addressed herein and may not be modified except in a writing signed by the Parties.

25.  The Court shall have exclusive jurisdiction over the interpretation and enforcement of this Stipulation, and each of the Parties hereby consent to such jurisdiction and covenant not to bring any action regarding the interpretation or enforcement of this Stipulation in any other forum.

*[Signatures Follow]*

Dated: April ___, 2022

Global Aviation Holdings, Inc.

By: _____
Name: Alfred T. Giuliano
Title: Solely in this capacity as Chapter 7 Trustee, and not in any individual capacity
Date:

National Union Fire Insurance Company of Pittsburgh, Pa. and its Related Insurers

By: _____
Name: James J. Rowland
Title:
Date:

Cerberus Business Finance, LLC

By: __/s/ illegible signature/__
Name:  Joseph Naccarato
Title:   Chief Operating Officer, Chief Credit Officer
Date:   April 26, 2022

By: _____
Name: Martin Bogue
Title:
Date:

183903.2

Dated: April ___, 2022

| | |
|---|---|
| Global Aviation Holdings, Inc.<br><br>By: _[signature]_<br>Name: Alfred T. Giuliano<br>Title: Solely in this capacity as Chapter 7 Trustee, and not in any individual capacity<br>Date: 4/26/22 | National Union Fire Insurance Company of Pittsburgh, Pa. and its Related Insurers<br><br>By: _____<br>Name: James J. Rowland<br>Title:<br>Date: |
| Cerberus Business Finance, LLC<br><br>By: _____<br>Name:<br>Title:<br>Date: | By: _____<br>Name: Martin Bogue<br>Title:<br>Date: |

183903.2

Dated: April ___, 2022

| | |
|---|---|
| Global Aviation Holdings, Inc. | National Union Fire Insurance Company of Pittsburgh, Pa. and its Related Insurers |

By: _____
Name: Alfred T. Giuliano
Title: Solely in this capacity as Chapter 7 Trustee, and not in any individual capacity
Date:

By: _*/s/ James J. Rowland*_
Name: James J. Rowland
Title: VP
Date: 4/26/22

Cerberus Business Finance, LLC

By: _*/s/ Joseph Naccarato*_
Name: Joseph Naccarato
Title: Chief Operating Officer, Chief Credit Officer
Date: April 26, 2022

By: _____
Name: Martin Bogue
Title:
Date:

183903.2

Dated: April ___, 2022

| | |
|---|---|
| Global Aviation Holdings, Inc. | National Union Fire Insurance Company of Pittsburgh, Pa. and its Related Insurers |
| By: _____<br>Name: Alfred T. Giuliano<br>Title: Solely in this capacity as Chapter 7 Trustee, and not in any individual capacity<br>Date: | By: _____<br>Name: James J. Rowland<br>Title:<br>Date: |
| Cerberus Business Finance, LLC<br><br>By: *[signature]*_____<br>Name: Joseph Naccarato<br>Title: Chief Operating Officer, Chief Credit Officer<br>Date: April 26, 2022 | By: *[signature]*_____<br>Name: Martin Bogue<br>Title: Assistant Secretary<br>Date: April 27, 2022 |

183903.2